The Chancellor.
Before I proceed to examine the merits of this case, it is proper that I should notice one or two formal objections to the complainant’s right to recover in this suit, which were made on the hearing. If the complainant had a perfect remedy at law to recover the money due to him on the contract, and which was received by the defendant Root, it is too late to make that objection at this time, as it was not insisted on in the defendants’ answer; and it has frequently been decided by this court that it is too late to make-such an objection for the first time at the hearing.
It is insisted on the part of the appellant that the defendant J. Stewart was primarily liable to the complainant for the money received of the postmaster general and paid over to Day, in discharge of the joint liability of Root and himself, and that the complainant, by examining him as a witness against Root, has precluded himself from having a decree against either. The rule is unquestionably as contended for by the appellant’s counsel, that if the complainant examines a defendant who is primarily liable, as a witness against his co-defendant who is only secondarily liable, he is not only precluded from having a decree against the witness, upon the part of the case to which he has examined him, but is also prevented thereby from obtaining a decree against the co-defendant who is only secondarily liable. (Goold v. O’Keefe, Beatty’s Ch. Rep. 356. Thompson v. Harrison, 1 Cox’s Ca, 344.) In this case the supplemental bill has been taken, as *637 confessed, as against the defendant John Stewart. And as it is substantially charged in that bill that he had, from the bond and mortgage, received more than was sufficient to pay the whole debt of Day for which Stewart and Root were jointly liable as "endorsers, if Root is obliged to pay to the complainant the money received of the postmaster general, he will be entitled to a decree over against J. Stewart for so much of the money as was applied in payment of their joint indebtedness to Day, with interest from the time it ivas so paid.
This case, however, does not come within the principle of the rule to which I have adverted. The reason of the rule that the complainant cannot have an adverse decree against a defendant as to a part of the case to which he has examined him as a witness, is, that it would be charging him upon his own evidence, which can only be obtained against himself by proper charges in the bill, and by calling upon him to answer, in the usual way. (See Palmer v. Van Doren, 2 Edw. Ch. Rep. 193.) Neither does the rule extend to the case of a "mere formal defendant, as an executor, or trustee, against whom no personal decree is sought, and who has therefore no personal interest in the question as to which he is examined as a witness against his co-defendants. In the case of Carter v. Hawley, (Blunt's Ambler, 583, n. 3,) Lord Hardwicke, in reference to this point, says: <e The rule of this court differs from that of law, because there are several cases where the complainant must make parties of those defendants whom he must necessarily examine as witnesses, as in the case of trustees, whom he must examine, and notwithstanding pray a decree against them; for though they may have the legal estate in them, they are not materially interested.” The principle of the rule that the complainant cannot have an adverse decree against a defendant whom he has examined as a witness, does not appear to extend to the case of a defendant who by his answer admits his own liability, or who admits the same by suffering the bill to be taken as confessed. I infer that such was the case in Carter v. Hawley, as Lord Hardwicke permitted the deposition of a defendant to be read against his co-defendants, upon a bill for the specific performance of articles of agreement for the granting a lease, although he *638 declared that the defendant who was thus examined was a necessary party to the suit. In Massy v. Massy, (Beatty’s Ch. Rep. 353,) where the complainant had examined the principal defendant as a witness against his co-defendants either through carelessness or ignorance although the complainant’s case was sufficiently admitted by the answers of all the defendants, Lord Chancellor Hart refused to dismiss the bill and turn the complainant around to a new suit, but directed the objectionable deposition to be expunged at the expense of the complainant. And in Lupton v. Lupton, (2 John. Ch. Rep. 614,) Chancellor Kent decided that a defendant who had suffered the bill to be taken as confessed against him, and thereby admitted that he was primarily liable for the payment of the legacy which was sought to be recovered against him and the other defendants, was a competent witness for his co-defendants, although there must be a personal decree against him in the first instance. In this court mere technical objections to the admissibility of evidence, on the ground that the witness is a party to the suit, are wholly discountenanced; although the complainant who has a right to call for an answer on oath from a defendant, as to every material fact in the cause, cannot be permitted to examine such defendant as a witness for the purpose of obtaining an adverse decree against himself. But where it appears from the answer of a defendant, or from his having suffered the bill to be taken as confessed, that he is primarily liable to the complainant, so that he stands indifferent as between other parties to the suit, and cannot possibly be either benefitted or injured by any testimony he may give in the cause, I can see no good reason why the right to examine him as a witness, on the part of the complainant as well as on the part of a co-defendant, should not be mutual. And such I think was the opinion of Lord Hardwicke, from his language in the case of Dixon v. Parker, (2 Ves. sen. 222,) who, after adverting to the difference between the rules of courts of law and the court of chancery in this respect, lays down the rule of evidence in the court of chancery thus : “ Where there is a defendant in this court, if, notwithstanding that he is not concerned in interest, either side may examine him as a witness; and, therefore, the com *639 píainant, although he has made a person defendant whom he wants to examine as a witness, may, on suggestion that he is not concerned in interest, obtain an order for it, saving just exceptions; and so may a co-defendant.53
Again; there are other reasons in the present case why the role insisted on by the defendants5 counsel should not be applied here, for the purpose of depriving the complainant of his relief and turning him around to a new suit. When J. Stewart was examined as a witness against the defendants in the original bill, he was not a party to the suit, neither did it appear from the bill that he was in any way interested in the matters as to which relief was sought against the then defendants. The defendant Root, however, in his answer, alleged that the order upon the postmaster general, upon which the money claimed by the complainant was obtained, was given for the joint benefit of himself and J. Stewart, the witness, to secure them as endorsers of S. Stewart, upon the notes to Day, and that a part of the money thus received had been applied to the payment of those notes; and it also appeared, from the testimony in the cause, that J. Stewart had received a bond and mortgage from the principal debtor, as a counter security, upon which he had realized sufficient to pay the whole debt to Day, for which he and Root were jointly liable as sureties of S. Stewart. Under these circumstances, and after the proofs in the cause were closed, a supplemental bill was filed against J. Stewart only, under the direction of the court, for the purpose of making him a party, and to enable Root to obtain a decree over against him if the complainant should succeed in the suit. As Stewart suffered this supplemental bill to be taken as confessed, no evidence could be taken in the supplemental suit. He has not been examined as a witness since hé was made a party; but at the hearing, Ms deposition which had been taken in the original suit was read by the complainant’s counsel against Root and S. Stewart, the defendants in that suit. If there was any legal objection to the admissibility of this deposition under these circumstances, which at present I cannot discover, that may be a good reason for suppressing that part of the testimony; but *640 it certainly affords no just ground for dismissing either the original or the supplemental bill.
The conclusion at which I have arrived upon another part of this case, renders it perfectly immaterial whether the deposition of J. Stewart is received or rejected. Independent of that deposition, the answer of the defendant Root and the written and oral testimony in the cause, show that he had sufficient to put him upon inquiry as to the complainants equitable rights, either as assignee of the mail contract, or as a sub-contractor under S. Stewart; even if Root and J. Stewart, for whose benefit the order was obtained, were in a situation to protect themselves as bona fide assignees of the money which was to become due under the mail contract with the postmaster general. But as the order was obtained merely as a, security, to be collected and applied in payment of a debt for which they were previously liable, and no additional responsibility was assumed or other security given up on the faith of that order, the prior equity of the complainant, if he had any, must prevail, whether Root or J. Stewart had or had not notice of such prior equity at the time the order was given, or subsequently thereto. The vice chancellor was, therefore, wrong in supposing that Root could defend himself on the ground that he was a bona fide assignee for a valuable consideration paid, even if every allegation in his answer is to be taken as true. Besides, the order itself was nothing more than an equitable assignment of the money to become due on the contract. And if there had been a previous equitable assignment to the complainant, who it appears has actually earned the money by carrying the mail, he has not only the prior but also the stronger and better equity to claim the assigned fund ; either of which is sufficient to authorize him to claim the money in the hands of the defendant Root, who paid no new consideration for his subsequent equity. It is only necessary, therefore, for me to inquire whether the complainant had such a prior equitable assignment of the fund.
It is insisted on the part of the defendants that the instrument, executed by the complainant and S. Stewart, is not an assignment of the mail contract, but is merely a sub-contract. It is not alleged in the bill, that the mail contract was assign *641 ed by Stewart, in the manner required by the regulations of the post office department to entitle the assignee to claim compensation in his own name. On the contrary, it is alleged in the bill, that the complainant was altogether ignorant of the regulation making it necessary for the assignee to give notice of the assignment to the department. He, therefore, claims to be entitled to the fund, under an equitable assignment merely, and if he has proved such an assignment, it is all that could be required of him, under the allegations in the bill The agreement, in this case, recites the original mail contract, and that S. Stewart has assigned his interest therein to the complainant, and then concludes thus: “ Now, therefore, it is agreed between the said Burr Bradley and the said Sylvester Stewart, that the said Burr will well and faithfully carry the said mail, agreeably to the terms of the said contract first mentioned, and that the said Burr shall, for doing the same, receive the full benefit of said contract, and be entitled to all monies due from the postmaster general, agreeably to the terms of said contract for carrying said mail; and that the said Sjdvester will deliver and pay over to the said Burr all monies or drafts received by said Sylvester, by virtue of said mail contract.” This, in equity, is clearly an assignment of the contract, and of the specific fund which was to become payable from the postmaster general under the same. In Yates v. Groves, (1 Ves. jun. 280,) Lord Thurlow decided that an order to pay a debt out of a particular fund belonging to the debtor, constituted an equitable assignment of the fund pro tanto, and gave to the creditor a specific equitable lien thereon, although the order had not been accepted by the holders of the fund before the debtor’s bankruptcy. (See also l Mad. Rep. 55 ; 4 Sim. 607; 1 Russ. & Myl. 602 ; and 3 Dea. & Chit. Rep. 218.) Here, by the very terms of the agreement, the mail contract is declared to be assigned to the complainant, and it is also declared that he shall receive the full benefit of the contract, and be entitled to all monjes to become due for carrying the mail under the same. It seems to be impossible to make use of language more clear and'explicit, ie show the intention of the parties to give the assignee a *642 specific equitable lien upon this particular fund. The subsequent covenant on the part of S. Stewart, to deliver and pay over to Bradley the monies and drafts received by virtue of the mail contract, is strictly in accordance with this view of the case, and would give the assignee the right to follow such monies and drafts into the hands of any persons, except bona fide receivers or purchasers for a full consideration paid upon the faith of such .monies or drafts, so long as the particular fund could be traced and identified.
The defendants Root and 8. Stewart have not, in their answers, insisted, as a defence, that the postmaster general elected to consider the contract forfeited, in consequence of any irregularity in carrying the mail under the same, or that 8, Stewart sustained any damage by reason of the complainant’s neglect to comply with the literal requirements of the contract ; but, on the contrary, it appears that the contract was considered in full force, and that the money received by Root was paid under the same. The whole of the evidence, therefore, as to any irregularity in carrying the mail, and as to the private habits of the complainant, was irrelevant and impertinent, and should have been expunged from the record, if a proper application for that purpose had been made.
The whole of the monies and drafts received by the defendant Root belonged to the complainant, under the assignment or agreement of 8. Stewart, and should not have been withheld from him after Root had notice of his equitable right thereto, even if Root and J. Stewart were not chargeable with notice of such rights at the time the order upon the postmaster general was received and there was no intention of defrauding Bradley at that time. And as the defendant Root refused to account for the money, and deliver over the drafts* after he had full notice of Bradley’s rights, the vice chancellor has very properly charged him with the whole amount of such money and drafts, with interest, and the costs of this suit.
Upon the facts stated in the supplemental bill, which is taken as confessed, and which facts appear from the testimony in the cause, there can be no doubt as to the right of the defendant Root to a decree over, against the defendant J. Stewart, for *643 Ilhe $105 of the complainant’s money which was paid to Day, with the interest thereon from the time it was so paid; J. Stewart having realized, from the bond and mortgage turned out by the principal debtor, sufficient to pay the whole amount .due to Day for which Root and J. Stewart were liable as joint sureties. And as J. Stewart was a co-actor in the transaction by which the complainant was deprived of the money on the mail contract, for his and Root’s joint benefit, and with ■a full knowledge, according to his own admission, of Bradüey’s equitable right to the fund, I think he should be charged with the costs of this suit jointly with the other defendants, and should contribute his equal share with Root in the payment thereof.
That part of the decree between the co-defendants, which provides for an equitable contribution, will subject them to further unnecessary cost and expense, when the whole facts, upon which the right to equitable contribution depends, sufficiently appear upon the pleadings and proofs now before the court. The reference to a master to compute the interest on the $395 will also create'an unnecessary expense which may as well be avoided, although it is not of itself sufficient to justify an appeal. The decree of the vice chancellor must therefore be so modified as to decree the payment of the $395, •to the complainant, by the defendants Root and S. Stewart, with interest thereon from the first of July, 1823, until the same shall be collected or paid ; that the defendant Root have a decree over against the defendant J. Stewart for $105 and interest thereon from the same time; and that the complainant recover his costs against all the defendants jointly, J. Stewart contributing equally with Root towards the payment of such part thereof as cannot be collected of S. Stewart- on. the execution. The complainant is also entitled to his costs on this appeal against all the defendants, and to be apportioned, as between Root and J. Stewart, in the same manner.
As one of the parties has died since the argument, the decree upon this appeal must be entered nunc pro tune, as of the day when the hearing commenced before the chancellor.