## MONTANDON & CO. v. DEAS.

1. The *lien* given to master builders, and mechanics, by the act of 1834, may be enforced in equity.

2. The *lien* created by the statute, is not restricted to cases, where the party for whom the building was erected, owned the legal title to the land; but extends to any interest, which the party could pass by mortgage.

3. It is not necessary to the creation of the lien, that the land should be described in the building contract, upon which the building is to be erected.

4. An agreement for a lease, executed in part, owned by the party contracting for the building, is sufficient to support the lien. And if the lease is not executed until after the contract for the building is made, it will, when executed, relate to the time of the contract for the erection of the building.

5. An extension of the time within which the building may be completed, and the making slight alterations in the manner of its execution, will not abrogate the contract or affect the lien, the parties in their settlement regarding the contract as binding.

6. The execution of notes for the payment of the work, upon a settlement of the account, and extension of the time of payment, will not have the effect to avoid the lien, unless such was the intention of the parties.

7. The lien of the builder, is paramount to the right of one, who took an assignment of the lease, subsequent to the completion of the building, and the recording of the contract.

8. A decree may be rendered on the testimony of a co-defendant, if his interest is precisely balanced between the parties to the suit, although he is an indispensable party to the bill.

9. A refunding bond is not necessary when a non-resident defendant, is represented by a trustee, a defendant to the bill, and a resident of the State.

Appeal from the first Chancery District.    Before Hon. A. Crenshaw.

THE bill filed by the defendant in error, alledges that on September 6, 1844, one P. Chantron made an agreement with M. D. Eslava, by which Eslava agreed to lease to Chantron certain property in Mobile, and afterwards said Eslava executed a lease in writing to said Chantron for the same property for six years from November 1, 1844; that on the sixth September, 1844, Chantron entered into a building contract, duly recorded in Mobile county clerk's office, by which it was agreed between James S. Deas, the complainant below, and said Chantron, that Deas should build for Chantron a brick house in conformity with certain plan and specifications, &c. and complete the same by the first January next after. In consideration thereof, Chantron agreed by same contract to pay to Deas $5,600, as follows, viz : $1,800 for purchase of materials, when called on during the progress of the work, and to give his notes for balance in four equal payments from the completion of the building, payable on May 1, 1845, January 1, 1846, and January 1, 1847; and Chantron also agreed by same contract that all of his (Chantron's) interest in said lands and premises leased from Eslava should be pledged for the payment of said notes. Bill further alledges, that said contract had reference to certain buildings to be erected by Deas on said leasehold premises, and that the time for completing said building was by consent of Chantron in writing annexed to said instrument, so extended as to allow the building to be completed at any time in January, 1845. Bill alledges Deas has in all things performed his part of the contract. That about the sum of one thousand —— hundred dollars, on account of said building erected, has been paid by Chantron, and the remainder still unpaid. That after the said contract was made and recorded, it was agreed between Deas and Chantron that the notes described therein and secured thereby, should be so altered as to be payable at times different from those specified, and were altered accordingly, and in place of the notes described in the contract, four other notes were given, dated March 15, 1845, with interest from

date, each for $902 56, payable, one on the 15th September,
1845, one on March 15th, 1846, one on September 15th,
1846, and one March 15th, 1847. That these last notes
have never been paid, and are ready to be produced and
proved. That said last four notes were given for the erec-
tion of said building, and for the same debt as that secured
by building contract, and merely as substitutes for the notes
described in said contract. Bill charges the said contract is
as operative for the security of said last four notes, as it could
have been for the notes described therein, if no substitution
had been made. That said contract operates, under the stat-
ute of Alabama, as a lien on the said lands and premises, and
the building thereon, which are liable in equity to the pay-
ment of said debt. Complainant (Deas) has been informed,
and believes that A. S. Dumee, A. Bassford, L. E. Montandon
and P. Chaudron, claim some interest in said leasehold pro-
perty, but charges that their rights (if any) are subordinate
and subsequent to those of Deas. Bill prays process to
Chantron, Bassford, Dumee, Eslava, Montandon & Chaudron,
and on their answer or default, that the court would decree
said building contract to be operative and valid as a lien on
said leasehold estate, to secure said substituted notes; that
the lien of Deas is paramount to those of the said defendants,
also for a reference to ascertain the amount due Deas on said
substituted notes, and then for a decree of sale unless money
paid, and for foreclosure as to the said leasehold, and for all
further or other relief which may be suitable.

Chantron answers—He admits the agreement betwixt Deas
and himself for a lease, but the precise terms thereof were
not settled till January 30, 1845, when a lease in writing, as
described in the bill, was executed. By the terms of lease,
Chantron was bound to leave on the land at the end of the
term, a certain building and improvements, as specified in a
certain plan, and which improvements were commenced, bnt
not finished at the date of the lease, and he (Chantron) was
bound to pay all taxes, &c. and keep said building in good
order during the term, and also insured for $6,000, to re-
build in case of destruction by fire; and further, that it was
agreed thereby that Chantron should not transfer said lease
without Eslava's consent in writing. That soon after the

execution of said lease, said Chantron, on 15th February, 1845, by certain deed, (with consent of Eslava in writing) did transfer said lease to Dumee as trustee to secure certain *bona fide* debts to A. Bassford and to Montandon & Chaudron, which said deed was duly recorded in county clerk's office. That said debt to Bassford was by two notes dated January 30, 1845, due five months and seven months from date, for $1,007 12 each. The debt to Montandon & Chaudron was for money lent, and the amount is not ascertained, but is about $5,000; and he believes the Bassford notes are now also held by them. That he is advised said trust deed is a prior lien to the said building contract. Admits he executed a building contract with Deas on the 6th September, 1844, to be executed according to a plan and specifications. Admits the time for finishing the lower story was extended to the end of January, but denies said contract, was ever performed by Deas, and denies he (Chantron) is bound to perform the same, or ever was, and is advised that by reason of Deas's non-compliance, it cannot be enforced against him, and that it could in no event create a lien on the lot described in complainant's bill, or on any particular lot, and that it was not intended to create any lien, although it provided for one to be given when the contract was complied with, but that as it never was, no such lien was given, but on the contrary, defendant refused to recognize its obligation on him, and settled differently with the complainant for the work he did, and he (Chantron) claims damages for breach of contract. He admits Deas erected the building, but not within the time specified, nor was the whole work done by complainant which the contract specified. Respondent, for the purpose of hastening the building, had part of the work done at Deas's request, but still the house was not delivered till February 22, 1845. That respondent was greatly injured by this, and therefore refused to recognize the obligation of the contract on him. That after the making said trust deed to Dumee, defendant (Chantron) settled with Deas for the work done by him contemplated by the contract, but not the entire work of the contract as above stated, and not done in time, and also for other work on the same building under a subsequent agreement, and not contemplated by said written contract,

and for payment of said work, Chantron executed to complainant (Deas) on March 15, 1845, the last four notes described in complainant's bill, and also transferred to Deas three notes made by D. K. Hutchins, one for $750, due January 20, 1845, one for $1,000, due January 1, 1846, one for $1,000, due May 1, 1846, as security for payment of defendant's notes, and on said March 15, 1845, said Deas executed to respondent his receipt for said Hutchins's notes as security, and also receipt for said four notes "in discharge" of his account rendered for said work, but respondent did not receive said work as a compliance with his contract, nor settle according to the terms of the contract, and he says no other notes were made, and no substitution had.

Respondent further says, the non-fulfilment of said contract was not owing to any default on his part—he was anxious to have it done, and made arrangements with Montandon & Chaudron to obtain money as an advance, as often as wanted, to comply with his engagement in the contract, to pay $1,800 when called on in the progress of the work, and he did pay $1,918 75, which was loaned him by Montandon & Chaudron, and paid to Deas, and respondent gave a lien to said Montandon & Chaudron to secure said debts to them, believing Deas had no lien. Supposed Deas was of the same opinion, as he, before bill filed, applied to defendant to receive back the four notes, and substitute four others to correspond with the building contract, and offered in consideration thereof to extend the time of payment. Said notes now held by complainant are not such as the contract contemplates; the consideration, amounts and times of payment are different, and the agreement specifies no particular land; and if the contract had been performed, it could create no lien under the statute, but it was violated, and all lien lost. He is advised the instrument recorded and relied on by complainant is not such as would create a lien under the statute, and he therefore demurs, as well as because the bill shows no right to relief in equity; and he prays to be dismissed, &c.

Montandon & Chaudron answer—They know not, save as informed by complainant's bill, whether, on September 6, 1844, Chantron made an agreement with Eslava as set forth, and they ask proof. They admit that on January 30, 1845,

Eslava by lease leased the premises described for six years from November 1, 1844, to Chantron, as appears by the record in the county court clerk's office. They admit, as charged in the bill, that there is on record in the office of the county court clerk of Mobile county, a certain written building contract, purporting to be dated September 6, 1844, made by and between Chantron and complainant, Deas, which is substantially the same as described in complainant's bill, except it is expressly stated in said contract that to secure $3,200 of the sum to be paid by Chantron, the latter had transferred to Deas the notes of one D. K. Hutchins, as collateral security. Respondents presume it is true that said contract between Chantron and the complainant had reference to buildings to be erected on the leasehold property described in the bill. Respondents are ignorant of any extension of time to complete the building, and ask proof. They know not if Deas fulfilled his contract, and crave proof. They know not whether the four notes claimed by complainant are mere substitutes for those described in the contract, nor whether they were given for the same debt, and they crave proof. Respondents say Chantron was and is indebted to them in $5,000, or thereabouts, for money lent, and that he was also indebted to Bassford in two notes, and that on 15th February, 1845, in order to secure payment of said sums, said Chantron made his trust deed, by which he conveyed to Dumee as trustee, his leasehold interest in the property described in the bill, as well as certain other property, which said deed of trust is hereto annexed. That respondents now hold the two notes of Bassford, and are entitled to all his equities, and that no part of the indebtedness, either to them or Bassford, has been discharged. Respondents aver that their deed of trust is operative for their benefit, notwithstanding the building contract, because they say said building contract subsequent to its being recorded, was altered and abrogated by the parties, and as shown by complainant's bill, different notes were made than those in the contract. They are advised said contract does not operate under the statutes of Alabama as a lien on the leasehold interest of Chantron, and they say the same cannot be subjected in equity to the payment of complainant's debt. They

deny that their rights are subordinate to complainant's. They would long since have compelled an execution of said trust deed, had they not hoped that Chantron would be able to pay, &c. They deny all combination, &c.

M. D. Eslava answers, admitting his agreement with Chantron for a lease, and his lease to him as stated in the bill. He presumes the building contract was made between Deas and Chantron. Presumes Chantron did pledge his leasehold interest to secure Deas. Does not know how much Chantron owed Deas. Knows nothing about the claims of Montandon & Co., Dumee and Bassford. He claims no interest in the dispute between Deas and said Chantron, Dumee, Montandon & Co. and Bassford. It is immaterial to respondent who may be decreed to enjoy Chantron's leasehold estate. He has always been willing Deas should enjoy the benefit of the security given him by the lien of his building contract, and is now willing that the court should decree in favor of Deas, so far as the leasehold is concerned, if proper and right. He insists upon his reversionary right.

The other defendants were regularly brought into court, and a decree *pro confesso* taken against them.

Leave was given complainant to examine Chantron as a witness.

The evidence, so far as it is important, will be found embodied in the opinion of the court. The chancellor considered the building contract as valid, and that it created a subsisting lien, on the interest of Chantron, in the leasehold premises; and that it stood as a security for the payment of the substituted notes; that an account be taken, *&c.* This is now assigned as error.

GEORGE N. STEWART, for appellants.

1. Chancery has no jurisdiction in this case. The demand is a legal one, and the statute provides a legal remedy. Without the statute, there would be no chancery jurisdiction, and the statute gives none.

2. The statute should not be construed to apply, except where the contracting party owns the land, and shall not be extended to give a lien on a leasehold estate, particularly where a credit is given for the payment. 14 Pickering, 49;

1 Johns. Cases, 221; Cross on Liens, 25, 43, 83; 4 Campbell, 146; 2 Kinne's L. Comp. 184; 1 Brockenbrough, 166; 2 Ibid. 222.

3. The contract cannot give a lien, because the land is not specified in the recorded contract.

4. The lien must relate to the date of the contract by the law. At the time of the making and recording of this contract, Chantron had no title whatever. He could therefore give no lien. It cannot be sustained by title afterwards acquired. 14 Pickering, 49; 1 Ohio, 143; 6 Binney, 135.

5. The lien cannot be asserted, because the contract was not complied with by Deas. The claim for payment now arises out of a settlement or compromise afterwards made, and is based on the labor performed, but not on the terms of the contract itself, which alone could create a lien.

6. The obligation of the contract was to pay a portion of the money, to deliver his notes, and to deliver other notes as collateral security. All this has been done by Chantron, and a receipt given to him in discharge of the claim. If any lien existed, it here ceased, and the remedy is now on the securities contracted for and paid in discharge. Cross on Liens, 173, 260; 34 vol. Law Library; 14 Wendell, 201.

7. The right of Montandon & Co. is paramount to that of Deas. Chantron had title when he gave it, the record disclosed no lien on the particular property, the contract was not performed, and the settlement discharged all lien. Therefore it could not be asserted against Montandon.

8. The claim of lien of Deas cannot be asserted against Montandon, because Deas departed from the contract, extended the time for his own payment, and received less collateral security than the contract claimed, which is an abandonment of the contract for lien preventing Montandon from substituting himself to it.

9. The complainant gives no account whatever of the collateral paper received by him, and which is past due, and cannot assert his lien against Montandon without so doing, and must be held chargable with it, which overpays what was due when the bill was filed. 10 Ala. 535.

10. No decree can be rendered against Chantron, because

he was used by the complainant as a witness on the trial; and as he is an indispensable party, no decree could be given without excluding his deposition, and without it, there can be no decree for the complainant.    10 Ala. Rep. 136 ; 5 Paige, 632 ; 2 Edwds. Ch. R. 192 ; 2 Johns. Ch. R. 614.

11. No refunding bond was required, or given, for the benefit of Bassford, as the statute provides, he being a non-resident defendant.

JOHN A. CAMPBELL, for appellees.

CHILTON, J.—The bill in this case is filed by James S. Deas, to enforce a lien as a builder, under the statute of 1834, (Digest, 375,) which provides "that master builders and mechanics, of every denomination, contracting in writing to put up and erect buildings, of every description, shall have a lien in the nature of a mortgage upon the tract, parcel or lot of land, upon which such building or buildings shall be put up and erected, as well as upon such building or buildings, until the price or compensation for services and for materials found, shall be fully paid and satisfied, unless a contrary stipulation be made and agreed upon at the time it is entered into : *Provided always*, that such lien shall not have a priority over *bona fide* or legal incumbrances, existing anterior to the time of the contract being made, if said mortgages and incumbrances shall be duly recorded according to law.    By the second section, the contract is required to be recorded in the clerk's office of the county court of the county where the building is to be erected, within thirty days after the building is erected, or the lien is declared to be inoperative."

By the third section it is provided that " when any judgment or decree shall be rendered in favor of any master builder or mechanic upon such contract, execution may be levied upon such tract, parcel or lot of land on which the building has been put up, as well as upon the buildings and improvements thereon erected and made, and all the right, title and interest the defendant had in and to the said lot,

6

tract or parcel of ground, at the time the said contract was entered into, as well as the buildings and improvements erected and made thereon, may be sold to satisfy such judgment or decree, provided such builder or mechanic may levy also on other property," &c.

1. On the part of the appellants, it is insisted that chancery has no jurisdiction to enforce the lien given by the statute, but that the mode prescribed by the statute must be pursued, which is to enforce the lien by the levy of an execution. The statute says the mechanic "shall have a lien in the nature of a mortgage," and speaks of suits upon such contracts resulting in *judgments or decrees.* Now as executions may issue upon decrees in chancery as well as judgments at law, (Digest, 348, § 29,) it seems to me there is nothing in the wording of the act which confines the remedy to a court of law, but rather the reverse, as being in the *nature of a mortgage,* which courts of chancery foreclose, it would seem wanting in this nature, if the appropriate remedy should be denied. It is not necessary that such jurisdiction should be specifically conferred by the statute, as the argument supposes, but it is sufficient if the statute create the equitable right, and that it comes within the ordinary and appropriate jurisdiction of the equity court, and that the exercise of such jurisdiction is not prohibited by the act. Cases are numerous where similar jurisdiction has been exercised. See Gillespie v. Bradford, 7 Yerg. Rep. 168. In Black· v. Breenan, 5 Dana's Rep. 311, it is held that chancery has jurisdiction to enforce liens and pledges of personal· property generally, and may order the sale of a horse belonging to an innkeeper's guest to pay charges. So, in Gambling v. Read, 1 Meigs's Rep. 281, it was held that one who had sold a slave at a fixed price, to be paid on a certain day, but who retained the title as security for the payment, could go into equity to enforce his lien, against one to whom such slave had been assigned in trust by the vendee. 2 Story's Eq. 461-2.

2. We do not think the design of the legislature was to restrict the lien to cases where the party for whom the building was erected owned the *legal title* to the land, but the

proper construction of the act would embrace any interest which the party could pass by mortgage.

The cases referred to, do not sustain the view taken by the counsel for appellants. The case of Thaxter v. Williams, 14 Pick. Rep. 49, was an adjudication upon a statute very different from ours. In Massachusetts, the act provides for a lien in cases where the person contracting for the erection of buildings is the (owner) proprietor of the land, and the court in the case last referred to, say very properly, that the lien cannot be extended to cases where the party is "a mere tenant or intruder." The statute of this State provides for a sale in satisfaction of the lien of "all the right, title and interest," which the contracting party had at the time of the contract, and in our opinion clearly embraces leasehold as well as greater estates.

3. It is further insisted, that the recorded contract in this case cannot give a lien, because the land is not specified in it.

It is true, the land is not specified in the contract, but it does provide that the lease from M. D. Eslava to Chantron is pledged for the payment for the work, so that the contract by reference to the lease, may be rendered sufficiently certain. But without this, does it follow that the land must be described in the building contract in order to create a lien? This act should receive a liberal construction, as it is but an extension of the doctrine of lien, so much favored by the courts, as consonant with every principle of equity and justice as applied to personal property. Cross on Law of Lien, 24. The intention of the act was, to give to the mechanic who had expended his labor and furnished materials in improving the ground of another, a prior right of satisfaction by a lien upon the building, and the interest of the party contracting for its erection, in the land so improved. This right is not dependent upon any peculiar provision in the contract for its existence, but is created and attaches by virtue of the statute, when the contract for building has been duly recorded. If the contract must provide for the lien, the statute would be nugatory, as this could have been done without such law—"*conventio vincit legem.*" But under the statute,

an express stipulation is required in order to prevent the lien from attaching.

The act of 1821, which this act repeals, limited the lien to the *building* which was erected, or worked upon, for the services of the workmen. This act, passed in 1834, extended the lien to the *lot* or *tract* upon which the building was erected, thus remedying the defect in the former law. Aik. Dig. 308. The terms of the contract for the erection of the building must be reduced to writing and recorded. The building of the house is an act open and notorious, and the lien is perfected upon the completion of the work, and recording of the contract. These, in the absence of a particular description of the land in the contract, are sufficient to put a prudent man upon inquiry into the existence of the lien, and to charge him without notice, more especially if, subsequent to the registration of the contract and the completion of the building, he take an assignment. It is obvious that the statute designed the erection of the building to operate as notice, from the fact that the contract is not required to be recorded until within thirty days after the erection of the same. So that the argument deduced from inconvenience of want of notice, and surprise, is not well founded.

But it is asked, if a party owns a section of land, and contracts for a building on one corner of it, or fails to specify where the building shall be placed, and it is erected on one corner of the section, will the lien cover the whole, or how much of it? I answer the whole tract, if necessary to pay the debt, and that such is the just construction of the act. If the laborer is worthy of his hire, there is certainly nothing inequitable in saying the owner shall not avail himself of the value of the fixtures without compensation to the party who erected them, and this only, such lien secures. Besides, the lien can be discharged by giving good security to the builder for the price. Dig. 376, § 4.

4. We do not consider the objection available to the appellants, that no lien could be created by the contract between the defendant in error and Chantron, because the latter had no written evidence of a lease from Eslava at the date of said contract. The record shows there was an agreement to lease, and which agreement was partly executed by

Chantron in taking possession of the lot, and in making the quarter part of the improvements for which compensation is sought by the bill, before its terms were reduced to writing. If it had never been reduced to writing, it is obvious a court of chancery would have decreed a specific performance. in virtue of the part performance which relieved the contract from the operation of the statute of frauds. In that event, the lien would attach because the contract would be regarded as obligatory from its date. That it was subsequently reduced to writing, cannot place the party in a worse condition. So far as respects the lien of Deas, it relates back, and takes effect from the time the parol agreement was made. The writing but furnishes evidence of a contract previously made and partly executed, but definitively settled by its terms, and notwithstanding the parties to the lease date its commencement from the first of November, 1844, after the contract for building was made, still, the court considering that as done which ought to have been done, will give effect to it co-eval with the parol agreement, and consider Chantron as having a leasehold estate at the time he contracted for the building.

5. It was entirely competent for Chantron to waive a strict compliance with the terms of the contract on the part of Deas, as to the time when the building should be completed. This delay however resulted from a change in some part of the building from the original plan, at the instance of Chantron, and could not work a forfeiture of the lien. The settlement made between the parties clearly shows, they regarded the original contract, which was the basis of that settlement, as binding. The amount is charged by Deas for the building, as provided for by the terms of that agreement, and the appropriate credits are allowed. It appears that the difference between the work as originally contracted to be performed, and as it was completed, amounted to $72; which sum, in the settlement was placed to the credit of Chantron. That Deas was allowed the whole of the month of January, 1845, within which to complete the building, and that slight alterations were made in the manner of its erection, by consent of the parties, do not show an abrogation of the contract, nor in our opinion affect the lien.

6. Neither will the renewal of the notes, or the extension of the time of payment have the effect to avoid the lien, unless such was the intention of the parties. True it is laid down generally, "that a special contract for a particular mode of payment operates as a waiver and abandonment of the right of lien; and though work be commenced under an implied contract, and afterwards a special contract be made, for payment, the one contract destroys the other." Cross on Lien, 260. But this must be understood as applicable to those particular liens which the law gives in certain cases to brokers, factors, and the like, for charges, expenses, &c., in respect of personal goods, and does not extend to cases like the present, which are expressly declared by the statute to be liens in the nature of mortgages. The giving of the notes in this case, extinguishes a right of action upon the account, which is receipted in the usual form, but certainly they do not amount to a satisfaction of the demand, of which they are merely the evidence. And as the renewal of a note secured by mortgage, is no discharge of the mortgage, which nothing but the payment of the debt discharges, so we think in this case, the renewal of the notes, and the receipt of the account by notes, as well as the receipt by Deas, as collateral security, in accordance with the original contract, of the notes on Hutchings, do not discharge the security which the law has afforded the defendant in error for the payment of the sum due for building. See Pomroy v. Rice, 16 Pick. R. 22; Davis v. Maynard, 9 Mass. R. 242; Dunham v. Dey, 15 John. R. 555. This view does not conflict with the principle decided in Bailey v. Adams, 14 Wend. Rep. 201, that the lien of a mechanic is discharged by an agreement to look to the personal credit of his debtor, or another, for the satisfaction of his demand. There is no evidence in this case, that Deas ever intended to abandon his lien, and look alone to the personal credit of Chantron.

7. It results from what we have said, that the lien of the defendant in error is paramount to that of Montandon & Co., who took an assignment of the lease to their use, on the 15th February, 1845, subsequently to the completion of the building, and the recording of the contract between Deas and Chantron. They must, as we have seen, be chargeable with

notice of the prior lien, and the trustee in their behalf, to whom Chantrou assigned, takes the lease *cum onere.*

8. There is no evidence that the notes on Hutchings were ever realized, or that any portion of them ever was, or ever can be collected. But on the other hand the proof shows the notes not collectable. There is no negligence on the part of Deas, such as appeared in the case cited by appellant's counsel, (10 Ala. Rep. 535,) which could charge him on account of them, and if any sum has been realized upon them, the same, upon accounting before the master, will be regarded in ascertaining the amount due, so that in our opinion, the demand against Hutchings, transferred as collateral, can furnish no objection to the remedy sought by complainant below.

9. It is insisted, that as Chantrou is an indispensable party, and was examined as a witness by the complainant, no decree should have been rendered without excluding his testimony, and if that be excluded, the proof does not warrant a decree. True, the rule is stated to be, that a complainant cannot have an adverse decree against a defendant whom he examines as a witness, but must rely upon the evidence furnished in the usual way by his answer. Walker et al. v. Gibbs and Labuzan, 10 Ala. R. 136; Palmer v. Van Doren, 2 Edw. Rep. 192. But the rule does not extend to defendants who stand indifferently liable to both parties 10 Ala. 136. In Carter v. Hawley, Blunt's Ambler, 583, n. 3, Lord Hardwicke says, "The rule of this court differs from that of law, because there are several cases where the complainant must make parties of those defendants whom he must necessarily examine as witnesses, as in the case of trustees, &c., for though the legal estate is vested in them, they are not materially interested." Nor does the principle of the rule extend to cases where the defendant has admitted in his answer the facts charged in the bill, or where they have been taken for confessed against him. Bradley v. Root 5 Paige, 636. The same doctrine is held in Lupton & Pearsoll v. Lupton et al. 2 John. C. 614, by Kent, Chancellor, and it is consonant with the practice of the chancery courts, which dis-

countenance technical objections to depositions, on the ground that the witnesses were parties to the suit. 5 Paige, 638. In the present case Chantron confessedly owes a just debt, both to complainant below and Montadon & Co., and the question is, which debt shall have the prior lien upon his leasehold interest. He is indifferent then between the parties, as in the event of the success of either, the property goes to pay his debts. His interest is balanced. See Wright v. Wright, 2 McCord's Ch. Rep. 205; Alston's Ex'rs v. Jones, 1 Murphy, 45; Sharp v. Morrow, 6 Monroe, 305. But so far as we are advised, no objection was made in the court below to his competency as a witness, and is raised for the first time in this court. It may well be questioned whether the objection is well taken.

10. Once more—It is contended further by the appellants, that the decree is erroneous, as no refunding bond was required to be given for the benefit of Bassford, one of the parties secured in the trust deed to Dumee for the benefit of Montandon & Co., and others. The answer to the objection is, that Bassford is not an indispensable party, being represented by Dumee, the trustee, who is a resident citizen. Walker et al. v. Miller & Co. 11 Ala. Rep. 1067. Besides it is shown that Montandon & Co, own the demand formerly owned by Bassford, and that the decree is really not against Bassford. In such case, we think the statutary refunding bond may be dispensed with, as the decree would stand had the suit been dismissed as to Bassford.

We are unable to see any error in the record, and the decree of the chancellor is affirmed.