The Attorney-General of the State of New York *v.*
The Continental Life Insurance Company.

In the Matter of the Petition of Betsey A. Merrill.

A check drawn in the ordinary form, not describing any particular fund,
or using any words of transfer of the whole or any part of any amount
standing to the credit of the drawer, does not operate as an assignment,
equitable or otherwise, of funds of the drawer, in the hands of the
drawee ; and it is immaterial that the drawee is not a bank.

An order, check or draft, to have the effect of an equitable assignment,
must be drawn on a particular, specified fund.

Accordingly *held,* where an insurance company gave its check upon a
trust company, in payment of a loss, the company having at the time
on deposit a sum exceeding the amount of the check, but, prior to its
presentation, a receiver of the company was appointed, who withdrew
all the funds deposited, that the check not having been drawn on a
particular fund, did not operate as an equitable assignment *pro tanto* of
the deposit ; and that the claim having been only liquidated, not paid,
when the company failed and went into the hands of the receiver,
whereby the rights of all the creditors became fixed by statute, the
payee of the check was not entitled to have the same paid by the receiver
out of the funds, in preference to the claims of other creditors.

Also, *held,* that the fact that there was a receipt on the back of the check
— intended for the signature of the payee — did not affect its negotia-
bility, or create a lien upon an appropriation of the particular fund.

*In re Merrill* v. *Anderson* (10 Hun, 604) reversed.

*Vreeland* v. *Blunt* (6 Barb., 182); *Hull* v. *City of Buffalo* (1 Keyes, 193);
*Burn* v. *Carvalho* (4 M. & C., 690); *Yeates* v. *Graves* (1 Ves. Jr., 280);
*Bradley* v. *Root* (5 Paige, 641); *Murray* v. *Judah* (6 Cow., 484) distin-
guished.

(Argued November 20, 1877; decided November 27, 1877.)

Appeal from order of the General Term of the Supreme
Court in the second judicial department, affirming an order
of Special Term, directing John J. Anderson, as receiver of
the Continental Life Insurance Company, to pay to the peti-
tioner, Betsey A. Merrill, the amount of a check, drawn by
said company prior to the appointment of a receiver, in
settlement of a claim for a loss.

The Continental Life Insurance Company insured the life

of Albion C. Merrill, in the sum of $10,000, payable at his death to the petitioner, Betsey A. Merrill. The insured died in September, 1876, the company adjusted the loss with the petitioner at $7,820.67, and delivered to her a check for that sum, in the ordinary form, upon the United States Trust Company. On the back of the check was the following indorsement:

" This check is accepted as full payment of all claims on policy No. 14,214.                    MERRILL."

At the time this check was drawn, the insurance company had $21,074.94 on deposit with the Trust Company; but, before the check was indorsed by the petitioner and presented for payment, said receiver of the company had been appointed in proceedings by the Attorney-General, and the funds had been withdrawn; and, when the check was presented for payment, it was refused for want of funds.

The petition upon which the order appealed from was granted set forth these facts, and also alleged that the check was intended to assign and transfer to the payee so much of the company's funds on deposit.

*Ashbel Green*, for appellant. The giving of the draft did not operate as an equitable assignment of the funds standing to the credit of the company. (*Duncan* v. *Berlin*, 60 N. Y., 153; *Harris* v. *Clarke*, 3 id., 93; *Chapman* v. *White*, 6 id., 412; *Hopkinson* v. *Forster*, L. R. [19 Eq.], 74; *Tyler* v. *Gould*, 48 N. Y., 682; *Shaver* v. *W. U. Tel. Co.*, 57 id., 459; *Dykers* v. *Leather Bk.*, 11 Paige, 612; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 N. Y., 83; *Cowperthwaite* v. *Sheffield*, 3 id., 243; *Winter* v. *Drury*, 5 id., 525; *Noe* v. *Christie*, 57 id., 270; *M. & F. Ins. Co.* v. *Jauncey*, 3 Sandf., 257; Story's Eq. Jur., § 10, 47 *a*; *Row* v. *Dawson*, 1 Ves. Sr., 331; *Hutter* v. *Elwanger*, 4 Lans., 13; *Burn* v. *Carvalho*, 4 M. & C., 690; *Bradley* v. *Root*, 5 Paige, 632; *Morton* v. *Naylor*, 1 Hill, 583; *Field* v. *Mayor, etc.*, 6 N. Y., 179; *Hall* v. *Buffalo*, 1 Keyes, 193; *Vreeland* v. *Blunt*, 6 Barb., 182; *Phillips* v. *Stagg*, 2 Ed. Ch., 108.) The draft

did not effect an appropriation of its amount from the general deposit in the Trust Company. (*Dillon* v. *Barnard*, 21 Wal., 433; *Hoyt* v. *Story*, 3 Barb., 262; Story's Eq. Jur., § 1045 ; *Christmas* v. *Russell*, 14 Wal., .69; *Dykers* v. *Leather Bk.*, 11 Paige, 617; *Ætna Bk.* v. *Fourth Nat. Bk.*, 46 N. Y., 82; Morse on Banking, 248, 249; 2 Pars. on Notes and Bills, 78; *Bullard* v. *Randall*, 1 Gray, 605; *Duncan* v. *Berlin*, 60 N. Y., 151; *Lunt* v. *Bk. of N. Am.*, 49 Barb., 221; *Garden* v. *Bruce*, L. R., 36 P., 300; *Davison* v. *City Bk.*, 57 N. Y., 81; *Smith* v. *Miller*, 43 id., 171.)

*Elliott F. Shepard*, for respondent. The draft operated as an equitable assignment to its amount of the fund on deposit to the petitioner. (*Vreeland* v. *Blunt*, 6 Barb., 182; *Hosack* v. *Rogers*, 6 Paige, 415–429; *Hall* v. *Buffalo*, 1 Keyes, 193; *Burn* v. *Carvalho*, 4 M. & C., 690; *Morton* v. *Naylor*, 1 Hill, 583–585; *Yates* v. *Groves*, 1 Ves. Jr. 280; *Dickinson* v. *Phillips*, 1 Barb., 454; *Lett* v. *Morris*, 4 Simons, 607; *Bradley* v. *Root*, 5 Paige, 632; *In re Alderson*, 1 Mod., 55; *Clark* v. *Mauran*, 3 Paige, 373; *McEwen* v. *Johnson*, 7 Cal., 258; *Wiggins* v. *McDonald*, 18 id., 126; *Le Roy* v. *Globe Ins. Co.*, 2 Edw. Ch., 657.)

CHURCH, Ch. J. The check or draft was executed on the 14th of October, 1876, in settlement and payment of a policy on the life of the petitioner's husband. It was drawn on the United States Trust Company, and was in the form of an ordinary bank check. The company at the date of the check had upwards of $21,000 on deposit in the trust company. The check was transmitted to the petitioner in California, indorsed by her and returned and presented for payment November 9, 1876, and payment refused. Previous to the presentation of the check, and on 25th of October, a receiver of the insurance company was appointed, and on the 31st October, the receiver withdrew from the trust company all the funds which had been deposited. It is claimed that the check operated as an equitable assignment

of the fund deposited, *pro tanto*, and the Special and General Term below so held, and granted an order directing the receiver to pay over the money to the petitioner, from which order the receiver appealed to this court.

I have examined the point with some care, and with a disposition to affirm the order, if it could be done consistently with the rules of law, but I am unable to do it. The authorities cited by the learned counsel for the petitioner fall far short of sustaining the proposition. The general rule is, that to constitute an assignment, the order must specify the particular fund upon which it is drawn. In this case the order or check was general, directing the trust company to pay to the order of the petitioner, so much money. The authorities are uniform, and those cited by the counsel for the petitioner do not raise a conflict. In the case of *Vreeland* v. *Blunt* (6 Barb., 182), the order was, "Please pay N. W. S., or order, $7,000, out of the money you received from F. G. for me," etc., and it was accepted by the drawee when in funds, and this was properly held to be an equitable appropriation. In *Hosack* v. *Rogers* (6 Paige, 415) the chancellor held that a covenant by one member of an insolvent firm that he would pay to such creditors as should release the two junior partners, the full amount of their debts out of the proceeds of his claims upon the French government, when received, was in equity a specific appropriation of the fund for that purpose. The transaction was construed as within the principle of an order upon a particular fund, and there is nothing in the opinion indicating an intent to question the general rule. But the decree of the chancellor was reversed in the Court of Errors (18 Wend., 319). COWEN, J., said : "Here is no assignment, no mortgage or pledge, or order, or any other specific appropriation of the French funds, but a mere covenant to pay them over on their being obtained by the covenantor."

*Hall* v. *City of Buffalo* (1 Keyes, 193) was the case of orders by a contractor upon the comptroller upon a particular fund, viz.: the fund provided by the city to pay him,

and notice of same to the comptroller who represented the city, and it was held to be an equitable assignment. *Burn* v. *Carvalho* (4 M. & C., 690) applied the doctrine of equitable assignment. It was there held that A., having goods in the hands of B., as his agent at a foreign port, and being indebted to C., by letter to C. promised that he would direct, and by a subsequent letter to B. did direct, B. to deliver the goods to an agent of C. at that port. Before the delivery and before the letter reached B., A. became bankrupt, and it was held that C. had a good title in equity to the goods. The decision was put upon the ground of an engagement to pay out of a particular fund. The Lord Chancellor says: "Here is an existing fund in an agent's hand, and there is a distinct contract to discharge the liability out of that fund, and to give directions for that purpose." It is unnecessary to approve of the construction placed by the court upon that transaction. It is sufficient to say that it does not sustain the doctrine of a lien by a general order. In the somewhat similar case of *Malcom* v. *Scott* (3 Hare, 38), where the right of equitable lien was denied, the Vice-Chancellor, in referring to the decision in *Burn* v. *Carvalho*, said: "I do not conceive that Lord COTTENHAM meant to decide anything more in that case than that when you make out the agreement to give the lien, the form of the transaction is not material." *Yeates* v. *Graves* (1 Ves. Jr., 280) was the case of the giving up of a note by the holder upon receiving an order to pay out of certain purchase-money, of which the purchaser had notice, and was plainly within the general principle. *Bradley* v. *Root* (5 Paige, 641) simply decided that the assignment of a mail contract and an agreement that the assignee shall be entitled to the moneys to become due for carrying the mail, constituted an equitable lien on the fund, which was superior to a subsequent order on the same fund.

*Murray* v. *Judah* (6 Cowen, 484) was an action by the holder against the drawer of a check, and except for a remark of the circuit judge as a reason for denying a motion for a nonsuit in a preliminary stage of the trial, which can scarcely

be regarded as a *dicta* in favor of the doctrine that a check upon a bank operates as an equitable assignment of the fund standing to the credit of the drawer, the case has no bearing upon the question. It was tried and decided upon appeal upon other grounds. These are the principal cases referred to by the learned counsel to support the position of an equitable lien, and I have referred to them for the purpose of demonstrating how far short they are from giving countenance to that doctrine when applied to an ordinary check or inland bill of exchange. In all of them the general principle is applied, that the order, check, or draft must be on a particular fund, which must be specified, to have the effect of an equitable assignment.

The authorities against the claim of the appellant are numerous and decisive; a few only need be referred to. *Harris* v. *Clark* (3 Comst., 119) was the case of a bill of exchange, intended as a *donatio causa mortis*, drawn by the donor upon his depositary for $30,000. RUGGLES, J., said: " These cases establish the rule that a draft, payable out of a particular fund, operates as an assignment of the fund *pro tanto* to the drawee that an accepted bill of exchange operates the same way, but none of them go to the extent of giving that effect to a bill not accepted." There is no legal distinction between an unaccepted check and a bill of exchange. The appellant claims in this case that the trust company is not a banking institution. If so, then according to the last decision, the instrument should be regarded as a bill of exchange, and less effective in creating a lien than an ordinary check upon a bank. But the distinction is without any difference in principle in respect to the question involved here.

*Lunt* v. *Bank of North America* (49 Barb., 221) declares the rule accurately, that checks drawn in the ordinary form, not describing any particular fund, or using any words of transfer of the whole or any part of any amount standing to the credit of the drawer, but containing only the usual request, are of the same legal effect as an inland bill of

exchange, and do not amount to an assignment of the funds of the drawer in the bank. This I believe to be the settled law of this State, as it has been repeatedly affirmed in this court. (60 N. Y., 153; 48 id., 682; 57 id., 270, 459; 46 id., 83.) This doctrine accords with the relations between the parties. Banks are debtors to their customers for the amount of deposits. A check is a request of the customer to pay the whole or a portion of such indebtedness to the bearer, or to the order of the payee. Until presented and accepted, it is inchoate; it vests no title or interest, legal or equitable, in the payee to the fund. Before acceptance, the drawer may withdraw his deposit; the bank owes no duty to the holder of a check until it is presented for payment. Knowledge that checks have been drawn, does not render it obligatory upon the bank to retain the deposit to meet them. These rules are indispensable to the safe transaction of commercial business. Any other rule would produce confusion, and involve banking institutions and all depositaries of moneys, in responsibilities to conflicting claimants, which, while producing great embarrassments, would serve no beneficial purpose. In this case, the instrument referred to no fund; did not purport to create a lien or assignment of any fund, and the trust company did not even have notice of it.

It only remains to consider whether there is anything in the circumstances of the case to take it out of the general rule. It is urged that the statement in the petition, that the draft or check was intended to assign and transfer to the petitioner a like amount of the fund on deposit; but no fact is alleged showing such intention, and the allegation must be regarded as a conclusion of law. It is also urged that the receipt on the back, intended for the signature of the petitioner, took away its negotiability, and in some way transformed it into an assignment. A statement of the consideration for a draft or check, either generally or specifically, whether on the back or in the body of the instrument, does not affect its negotiability; and if it did, it would not create a lien or appropriation of the particular fund without some

expression to that effect, or an acceptance by the drawee. Again, it is said that the trust company in which the deposit was made, is not a bank, and that this fund was deposited and set apart to meet this demand, or at least demands of that character. It does not appear, unless by its name, that the company is not an ordinary banking institution, but the circumstance is quite immaterial. It is an institution, we must presume from the facts developed in this case, which received and paid out upon checks, deposits, and there is no fact stated indicating that the deposit was made for any special purpose. When the insurance company made the deposit, the trust company became its debtor to the amount of it, with the implied agreement to pay the same when requested. It does not appear that the fund was impressed with any trust, nor that it was not placed there for the general purposes of the depositor. It is doubtless true that, at the time this check was made, the officers of the insurance company expected that it would be paid, it may be, from the moneys then standing to its credit; but they might have increased the deposit, or changed or diminished it, or withdrawn it altogether. They gave the petitioner no specific lien upon it, either expressly or impliedly.

The petitioner was a creditor of the insurance company upon a claim upon a life policy. When she received the check, she was a creditor still, the claim not having been paid, but only liquidated. When the company failed and went into the hands of a receiver, the rights of all the creditors to all the assets became fixed by statute, and the petitioner, not having acquired any lien upon any of the assets, occupies the position of a general creditor. The necessary delay in transmitting the check for her indorsement, and, in returning it, was unfortunate, because, in the meantime, the statute had seized the assets, and provided for their distribution among all the creditors, and both precedent and reason have clearly defined and well established the general rule to be applied, and courts ought not to depart from it to meet a particular case of supposed hardship.

The order of the General and Special Term must be reversed and the motion denied, but, under the circumstances, without costs.

All concur.

Ordered accordingly.