ERIE COUNTY. — HON. ZEBULON FERRIS, SURRO-
GATE.—June, 1882.

KURTZ v. SMITHER.

*In the matter of the judicial settlement of the account of*
ROBERT K. SMITHER, *as administrator of the estate
of* CHARLES SMITHER, *deceased.*

A special deposit, in a bank, of a separate fund, for which a negotiable
  certificate has been issued, is transferable as a gift *causa mortis*, with-
  out indorsement or manual delivery of the certificate.
The bulk of decedent's property consisted of a special deposit, in the Bank
  of Commerce, in Buffalo, of about $2,000, for which he held a certifi-
  cate of deposit, payable to his order on the return of the certificate
  properly indorsed. He had no other funds in that bank. Shortly
  before his death, with the intent to give this sum, *causa mortis*, to his
  brother R., he drew a check on the bank, directing it to "pay to the
  order of R. the amount of deposit, and charge to account of" himself.
  The certificate was, at the time, in a drawer in the store of R.—
*Held*, that the check was an equitable assignment of the debt owing to dece-
  dent by the bank, and carried the certificate with it, and that the trans-
  action constituted a valid gift *causa mortis*.
Grymes v. Hone, 49 *N. Y.*, 17—followed.

JUDICIAL settlement of administrator's account.

Charles Smither died intestate January 28th, 1882, un-
married. He left a father and mother, and a sister.
His brother, Robert K. Smither, was appointed adminis-
trator of his estate, but, his father Robert Smither
showing himself entitled, the letters issued to Robert K.
Smither were subsequently revoked, and Charles Kurtz
and Robert Smither were appointed administrators in
his stead; and upon their application this judicial settle-
ment was had.

CHARLES F. TABOR, *for Charles Kurtz and Robert Smither, adminis*trators.

LYMAN M. BAKER, *for Robert K. Smither.*

THE SURROGATE.—The bulk of the estate of the de-ceased consisted of a deposit, in the Bank of Commerce, of $2,101.13, and for which he held a certificate issued by the bank, in the following words:

"BANK OF COMMERCE IN BUFFALO,
BUFFALO, January 11th, 1882.

No. 1195.   Charles Smither has deposited in this bank two thousand one hundred and one $\frac{13}{100}$ dollars, payable to the order of himself on the return of this certificate properly endorsed.   Interest four per cent."

On January 28th, 1882, Charles Smither, then being about to die (he died two hours after), drew a check in the words and figures following, to wit:

"BUFFALO, N. Y., Jan. 28th, 1882.
*Bank of Commerce:*
No. ——.   Pay to the order of R. K. Smither the amount of deposit, and charge to account of
$——.                          CHARLES SMITHER."

At the time of making this check, Charles was in pos-session of his normal mental faculties, and, conscious of his approaching death, desired and intended to make a gift *causa mortis*, to his brother, Robert K. Smither, of his money deposited in the Bank of Commerce.   The cer-tificate of deposit was, at the time, in the store of R. K. Smither, where Charles had been a clerk, in a drawer used by Charles.   The single question, therefore, in the

case is whether Charles made a valid gift *causa mortis*, to his brother Robert, of the deposit in the Bank of Commerce.

The deposit would seem to have been a special one, for it was in evidence that Charles usually deposited in the Erie County Savings Bank. For the deposit a certificate was taken out, payable to Charles' order on the return of the certificate properly endorsed. The certificate was a contract of the bank with Charles, in the nature of a promissory note (Barnes v. Ontario Bank, *19 N. Y., 152*). And it was capable of being transferred by delivery only, without endorsement as a *donatio causa mortis* (Westerlo v. Dewitt, *36 N. Y., 340*). So that, if the deceased had procured the certificate from the store, and delivered it to his brother, with intent to make a gift of it in view of his approaching death, the gift would have been executed and valid. But instead of doing that, Charles, without mentioning the certificate, gave his brother a check on the bank for the whole amount of his deposit. This was a special deposit—a particular fund—the only one the donor had in the bank, and for which a certificate was outstanding, and, the check being for the whole of the deposit, it would seem to operate as an assignment of the fund (Harris v. Clark, *3 N. Y., 93;* Att'y-Gen. v. Ins. Co., *71 N. Y., 330;* Yates v. Grover, *1 Ves. J., 280;* Morton v. Naylor, *1 Hill, 585*).

In Gray v. Barton (*55 N. Y., 68*), GROVER, J., says: "In such cases (Westerlo v. DeWitt, *supra;* and the case at bar), the thing given is the *debt* and the *evidence*." And LEONARD, J., in Cooper v. Burr (*45 Barb., 33*), says: "The situation, relation and circumstances of the parties and of the subject of the gift may be taken into

consideration, in determining the intent to give, and the fact as to delivery; a total exclusion of the power or means of resuming possession by the donor is not necessary:" citing Grangiac v. Arden (*10 Johns., 293*); Penfield v. Thayer (*2 E. D. Smith, 305*); and Allen v. Cowan (*23 N. Y., 502*).

Grymes v. Hone (*49 N. Y., 17*) is a case in point. There the donor, being the owner of 120 shares of stock, included in one certificate, in the Bank of Commerce in New York city, made an assignment in writing, in a separate instrument, of twenty shares of the stock to the plaintiff, and delivered it to his wife, to be given to the plaintiff on his death. Judge PECKHAM says: "The equitable title to this stock is thus passed by the assignment, and it was not necessary to hand over the certificate. A court of equity will compel the donor's representatives to produce the certificate, that the title may be perfected."

This is a strong case, and it is aided in the case at bar by the fact that the certificate itself may be said to have been presumably in the possession of the donee. It was in a drawer in his store. In Stevens v. Stevens (*5 T. & C., 87*) cited in Story's Equity Jur. (*12th ed., § 606, note*), where the gift *mortis causa* of a promissory note was in question, MULLEN, P. J., who wrote the opinion of the court, says: "The small note was in his (donee's) possession, that is, it was in the bureau in his house and presumably accessible to him. I think he was entitled to the small note or its avails."

The property sought to be given was the debt of the bank to Charles Smither. The certificate of deposit was not the debt; it was only the evidence of the debt in

writing. The instrument was negotiable, but it had not been negotiated. The debt and the written evidence were still the property of the donor when he made the gift. The donor was near his death. His mind was clear; his intention was undoubted; he wanted to give the deposit to his brother, and, to carry out his intent, he directed the bank to pay his brother the amount of his deposit, the debt, the substance, the particular fund; and is the fact that he failed in that supreme moment to think of the evidence of the debt, and to manually deliver it with his gift—is that to defeat the manifestly clear intention of the dying man? I think not. I think the check is an equitable assignment of the debt, and carries the certificate with it, and is to be held as a valid gift *causa mortis* of the deposit.

The reason for the strict rules which have been set about gifts of this nature is to prevent fraud and imposition (*2 Kent, 444*). Here, there is no fraud or imposition, and where the reason for the rule does not exist the rule itself ought not to be applied (Ch. J. SAVAGE, in Mechanics' Bank v. Griswold, *7 Wend., 168*).

A decree will be entered in accordance with this opinion.