## SUPREME COURT.

The Throop Grain Cleaner Company and Hiram K. Edwards, sheriff of Onondaga county, plaintiff, agt. H. Cordenio Smith, defendant.

*Contract for the sale of personal property — When the title to a demand passes to the vendor — Attachment — When lien created by levy — Whether a transfer has been effected, a mixed question of fact and law — Check or draft — Assignment — How much must be done to make an effectual assignment of an account — Code of Civil Procedure, sections 677, 678, 679 — Attaching creditor — Action by him to collect the demand attached — He cannot impeach the good faith of the transfer of the demand.*

Where an action is brought by an attaching creditor jointly with the sheriff who levied the attachment, against a creditor of the defendant in the attachment, to recover a claim attached, in aid of the attachment, pursuant to sections 677, 678 and 679 of the Code of Civil Procedure, and which is defended upon the ground that the demand was assigned prior to the levy of the attachment, it seems inquiry cannot be made into the question whether or not the transfer was fraudulent as against the attaching creditor.

No lien is created by the levy of an attachment upon a claim, unless the legal title to the demand is in the attachment debtor at the time of the levy.

Where there has been no formal transfer of the title to a demand levied upon under an attachment, it becomes a mixed question of fact and of law whether or not a transfer has been effected.

In such a case, whether or not a present appropriation of a debt or demand has been effected, so as to constitute a legal or an equitable assignment, is a question of intention, to be submitted to the jury, as matter of fact, for their determination, upon the language used by the parties, written or verbal, and the surrounding facts and circumstances.

A check or inland bill of exchange, drawn in the ordinary form, not describing any particular fund or using any words of transfer of the whole or any part of a demand standing to the credit of the drawer, does not operate as an assignment, either legal or equitable, of such demand, to have the effect of an equitable assignment, the draft must be drawn on a particular specified fund or demand.

Where the drawer of a draft for a demand due from the drawee delivers the draft to the payee, accompanied with propositions of sale, which are ac-

Throop Grain Cleaner Company agt. Smith.

cepted by the payee, and their minds meet on the terms of the bargain, and the draft is delivered and received as a mode of effecting a transfer of the title of the claim against the drawee, the title would pass, although the drawee refused to accept the draft. But the delivery of the draft alone, without any arrangement relative to a bargain and sale of the demand, or the delivery of the draft, accompanied with propositions of sale, not accepted by the payee, would transfer neither the legal or equitable title to the demand.

A draft made and delivered to the payee for the purpose of transferring the title of a claim due from the drawee, and the payee parts with no value, and relinquishes no rights against the drawer, the draft will not pass the title or affect an equitable assignment of the demand.

A *chose in action* may be assigned by parol, but to constitute such an assignment, there must be a surrender of all control over the demand by the creditor, and the appropriation of it by the purchaser must be absolute and unqualified.

Where on a proposed sale of a demand no part of the purchase price is paid by the purchaser, an agreement that the price shall be applied to a precedent debt owing by the seller to the buyer, does not amount to a payment of the purchase money as required by the statute of frauds, unless actually applied by giving a receipt or otherwise.

How much must be done to make an effectual assignment of an account, *query.*

Under a contract for the supply of a quantity of machinery, the purchaser is under no obligation to make any payment until the contract has been fully performed and the whole of the machinery delivered, and until then the purchaser does not become a debtor under the contract.

*Fifth Department, General Term, January,* 1886.

THIS was a reargument of a motion on the part of the plaintiff, after nonsuit, for a new trial upon case and exceptions, ordered to be heard in the first instance at general term. This action was brought on the 9th day of July, 1881, by authority of an order granted on that day, upon application made therefor, as a provisional remedy, under title 3 of chapter 7 of the Code of Civil Procedure, in aid of an attachment, in the names of the plaintiff in the attachment and the sheriff who executed the attachment, jointly, as plaintiffs, against the defendant, a debtor of the defendant in the attachment, to recover a claim attached in the hands of the defendant, as such debtor, and

reduce it to the possession of the sheriff, to answer any judgment that might be recovered in the attachment suit.

The plaintiff, the Throop Grain Cleaner Company, brought an action on the 6th day of May, 1881, in this court, for Cayuga county, by attachments against one Edward P. Allis (trading and doing business under the name or style of E. P. Allis & Co., at Milwaukee, Wis., his place of residence), as defendant, to recover the sum of $4,000 and interest, due on a contract for the manufacture, by Allis, of certain milling machinery.

This defendant, Smith, who resided in Onondaga county, was indebted to Allis in the sum of $4,100 for certain milling machinery sold and delivered to him by Allis, under the following agreement:

"This indenture, made this 4th day of April, 1881, by and between Edward P. Allis & Co., of Milwaukee, Wis., parties of the first part, and H. C. Smith, comprising the firm of H. C. Smith, of Marcellus, N. Y., party of the second part,

"Witnesseth, that the said party of the first part, in consideration of the sum hereinafter stated, to be paid to them by the party of the second part, at the times and in the manner hereinafter stated, agree to manufacture and furnish, at Milwaukee, Wis., f. o. b. cars, all to be good material and workmanship, the following articles, to wit:

"Three double set of corrugated rolls, in Gray's pat. noiseless frames........................... $1,800 00

Two double set of smooth iron rolls, in Gray's pat. noiseless frames........................... 1,000 00

Four No. 1 Smith purifiers, C. $350, less 25 per cent....................................

Doufour's bolting cloth, 20 per cent disc. price list.

"E. P. Allis & Co. guarantee H. C. Smith that the three double set of corrugated rolls will reduce the wheat and clear

the bran for 100 to 125 barrels of flour in twenty-four hours for winter wheat.

"Also that Mr. Gray shall visit the mill.

. "And they also agree to furnish plans of the arrangement of . machinery and work at cost within thirty days from this date, if so desired.

"And the party of the second part hereby agrees to pay for said articles as follows, to wit:

"Cash on receipt of goods.

"It is hereby agreed that said E. P. Allis & Co. are to use their best endeavors to have said articles ready for shipment at the time stated herein, and also that they shall be of a stated quality, but they are not to be held liable for any pecuniary damage in either case, except to make good any unmerchantable defect which may be proved to exist in said articles when furnished.

"In testimony whereof, the said parties have hereunto set their hands this 4th day of April, 1881.

 (Signed.)    "EDWARD P. ALLIS & CO.

        "H. C. SMITH.

"Witness:

 "W. D. GRAY.

 "L. V. RATHBUN."

The attachment was issued to the sheriff of Onondaga county, one of the plaintiffs herein, and delivered to him on the 7th day of May, 1881.

The sheriff, on the same day, levied the attachment upon a part of the machinery sold and delivered by Allis to Smith under their contract, in the hands of the railroad company as the property of Allis, the title to which, in an action brought by Smith against the sheriff to recover it, was held by this court in *Smith* agt. *Edwards, sheriff, &c.* (29 *Hun*, 439), to have previously passed to Smith.

On the 21st day of May, 1881, the sheriff levied the attachment upon the *claim* due Allis from Smith as the purchase

price of the machinery under their contract, in the hands of Smith, who had not paid the same, in the usual way by making demand, serving a certified copy of the warrant, giving notice, making and filing inventory, &c. Smith refused to pay the claim to the sheriff and *retained* the money due thereon.

Service by publication was made upon Allis in the attachment suit, and on the 16th day of August, 1881, judgment was entered and docketed therein in Cayuga county against Allis for $4,364.48, and a transcript thereof entered in Onondaga county and execution issued thereon to the sheriff of that county on the 17th day of August, 1881, who, on the same day, demanded payment upon such execution of the claim levied upon under the attachment, to secure payment of the judgment from the defendant Smith, who had not paid the claim to any one, and in whose hands it was attached, who refused to comply with such demand, and thereupon this action was brought.

In answering, the defendant alleged, as the principal defense, the assignment of this claim against him by Allis to the Farrell Foundry and Machine Company of Ansonia, Conn., prior to the issuing of the attachment, or the levy of said claim thereunder, or the execution thereof, and that such assignment was made in good faith, and for a valuable consideration, and vested the title to the claim in the Farrell Company, and that Allis then had no interest in the claim.

This transfer was attempted to be effected by means of two ordinary drafts, drawn on the 10th day of May, 1881, by Allis on Smith, payable to the order of the Farrell Company, one for $1,050 and one for $2,800, and mailed to the Farrell Company on that day inclosed in a letter of that date, and to be emphasized by two letters written and mailed on that day by Allis, after the letter inclosing the drafts, one to Smith and one to the Farrell Company, by a letter received from the Farrell Company by Allis & Co., dated May 13, 1881, and by the testimony of Allis and his son asserting a prior indebtedness from Allis to the Farrell Company, exceeding the amount of the

drafts, that credit was given Allis for the drafts, and that Allis acted in good faith in making the drafts and turning the claim over to the Farrell Company.

It appears that Allis and the Farrell Company had dealings and stated periods for accounting, the Farrell Company on the first of each month sending Allis a monthly statement for the preceding month, and Allis settling as per such statements with his notes, &c., it being a settlement once a month. These two drafts do not appear on the monthly statements of the Farrell Company either for May or June. On December 19, 1881, seven months after the claim was attached, an examination of the books of the Farrell Company was made, and these two drafts did not appear, nor had credit been given Allis for them. On the 9th day of June, 1881, after the attachment was levied upon the property, Smith notified Allis, at Milwaukee, by telegram of the seizure. On the 10th day of May, 1881, after receiving such notice, and with full knowledge of the attachment suit, Allis and his son had a consultation for the purpose of devising some scheme whereby the Throop Company might be defeated from levying the attachment upon this claim, and as a result thereof, these drafts were made and letters sent to the Farrell Company. Prior to this there had been no communication in any form, between Allis and the Farrell Company, regarding the Smith claim or the transfer thereof. Two drafts were made because all the machinery had not been delivered, and the smaller draft, representing the property delivered, Smith would pay at once, but the other he would not pay until he received the balance of the property. The balance of the property was not delivered until after the claim was attached. The drafts were not paid until September 10, 1881, and after this action was commenced. The drafts were forwarded for collection for Allis by the Farrell Company, as directed by Allis and in accordance with the instructions given by Allis to Smith, for their payment on the 16th day of May. After the drafts were received by the Farrell Company, Smith requested Allis to allow in reduction of the drafts a claim for commissions on

the machinery he had purchased, due one Rathburn, and which he had paid, of $385. And Allis made the reduction on the 17th day of May. Allis consulted with and sent his attorney, and went himself to Syracuse after the levy of the attachment, to arrange to contest the attachment, arranged with the Farrell Company for and provided the indemity to Smith, under which he was induced to pay these drafts, and retained, instructed and paid the attorneys who represented Smith in the action to recover the property attached, and in the defense of this action, directed and controlled every step that was taken, from the time the attachment suit was commenced, May 6, 1881, to the time the claim was finally paid by Smith, on September 10, 1881, four months after the claim was attached, in the hands of Smith, and after the claim was paid to the Farrell Company, prior to which time no credit had been given for it, or application made of it to Allis, by the Farrell Company. Allis directed the money applied on his notes, coming due the 12th and 18th of September, and the Farrell Company desired to apply it on the note of Allis, coming due October 1st. What was done with the money does not appear. As late as the 19th day of December it had not passed to the credit of Allis on the books of the Farrell Company.

After the evidence was closed, the defendant moved for a nonsuit, on the grounds —

*First.* That the complaint was unproved.

*Second.* That the evidence was undisputed, that the attached claim was transferred, accepted and Smith notified of the acceptance, and hence, there was nothing upon which the attachment became a lien by being served.

The plaintiffs, on the contrary, insisted and submitted —

*First.* That it appeared there had been no transfer of the claim, and that upon the evidence they were entitled to have the jury instructed to find a verdict in their favor.

*Second.* That they were entitled, upon the whole evidence, to go to the jury upon the question whether there had been any transfer at all of the claim attached.

*Third.* That they were entitled, upon the whole evidence, to go to the jury upon the question, that if a transfer of the claim had been made, whether it was made in good faith, or fraudulently, and for the purpose of cheating and defrauding the creditors of Allis, and especially the Throop Company.

The court ruled against the plaintiffs upon each and all the said propositions and granted the defendant's motion for a non-suit.

To which rulings and decisions the plaintiffs excepted.

And the case was thereupon directed to be heard in the first instance, at general term, upon case and exception.

This court granted a new trial at the October term, 1884 (*Throop* agt. *Smith*, 34 *Hun*, 91).

And at the January term, 1885, on application of the defendant, this reargument was granted on the authority of *Anthony* agt. *Wood* (96 *N. Y.*, 180).

*Rollin Tracy*, for plaintiffs.

I. The provisions of the Code of Civil Procedure constitute a complete system for the collection of debts by attachment (*secs.* 635, *sub.* 1, 636, *sub.* 2, 641, 644, 648, 649, *sub.* 3, 650, 654, 655, 677, 678).

The claims involved were of the character contemplated by and the proceedings had were in exact conformity to the requirements of these provisions of the Code (*Bills* agt. *Nat. Park Bank*, 89 *N. Y.*, 343; *Gibson* agt. *Nat. Park Bank*, 98 *id.*, 87; *Bowie, sheriff,* agt. *Arnold*, 31 *Hun*, 256; *Hall* agt. *Brooks*, 23 *id.*, 577; *Anthony* agt. *Wood*, 29 *id.*, 239; *Green* agt. *Stern*, 1 *City Ct.*, 460; *Kelly, sheriff,* agt. *Brensig*, 33 *Barb.*, 123; *Merchants and Traders' Bank* agt. *Dakin*, 50 *id.*, 587; *Lansing, sheriff,* agt. *Streeter*, 57 *id.*, 33).

II. There was no assignment or transfer of the claim at the time the attachment was levied, as matter of law.

If any indebtedness existed at the time from Allis to the

Farrell Company it was a precedent debt. There was no new consideration nor anything parted with, or surrendered or cancelled, at the time.

And it has long been settled that no person can claim title, as *bona fide* holder, who receives a bill or note on account of a precedent debt (*Stalker* agt. *McDonald*, 6 *Hill*, 93; *Bank of Salina* agt. *Babcock*, 21 *Wend.*, 499; *Bank of Sandusky* agt. *Scoville*, 24 *id.*, 115; *Torley* agt. *Lee*, 12 *N. Y.*, 551, 555; *Van Heusen* agt. *Radcliff*, 17 *id.*, 580, 583; *Phœnix Ins. Co.* agt. *Church*, 81 *id.*, 218, 222).

III. There was no assignment or transfer of the claim at the time the attachment was levied, as matter of fact, and this question should have been submitted to the jury.

The transfer attempted to be made was by means of the two drafts. All the letters were written after the drafts were made, except one, and were incident to the transfer.

No previous arrangement was made with the Farrell Company for any transfer.

The attachment debtor sent the drafts to the Farrell Company for collection, and requested them to give credit for the same on their books. This was not done, and on the 19th day of December, seven months after, had not been done. Two drafts were made, one for $1,050, and one for $2,800, because the machinery had not all been delivered, the smaller draft representing the machinery delivered, Allis stated would be paid by Smith at once, but the other he would not pay until he received the balance of the property. The drafts were forwarded by the Farrell Company for collection, with instructions to the bank to which they were forwarded to hold the larger draft and not present it until the balance of the machinery was received by Smith. This course was pursued. Smith on receiving notice of the drafts from Allis refused to accept or pay them until he had received all the machinery, and a claim of Rathbun's for $385 he had paid was deducted, and he was indemnified against the attachment proceedings and the replevin suit brought at the request of Allis. This reduction being made and indemnity

given, Smith, on the 10th day of September, and after this action was commenced, paid the $3,465, the balance of the claim. The balance of the machinery represented by the larger draft was not shipped by the Farrell Company, or received by Smith, until after the attachment was levied upon the claim, over four months before Smith paid the claim. Up to the time the claim was paid, no arrangement had been made between Allis and the Farrell Company as to how the money should be disposed of by the Farrell Company. They then corresponded on that subject, but so far as the record shows no agreement has yet been made for its disposition, and the Farrell Company hold it as collection agents, for and subject to the directions of Allis and as his money.

It takes, in this case, three to make a bargain, and since there was no acceptance or application of the drafts by the Farrell Company in the manner directed by Allis when he sent the drafts, and Smith did not accept them until after the levy of the attachment, the claim was secured under that levy, unaffected by this pretended transfer. This must certainly be the case as to the position of the claim covered by the larger draft (*Bills* agt. *Nat'l Park Bank*, 89 *N. Y.*, 343; *Gibson* agt. *Nat'l Park Bank*, 98 *id.*, 87; *Sidenbach* agt. *Riley*, 2 *How.* [*N. S.*], 143; *Blaut* agt. *Gabler*, 77 *N. Y.*, 461; *Juilliard* agt. *Chaffee*, 92 *id.*, 537; *Powell* agt. *Powell*, 71 *id.*, 71.)

The Farrell Company could only enforce collection from Smith by virtue of his acceptance, and, therefore, both the consideration of the drafts, as between Allis and the Farrell Company, and the condition and extent of their acceptance, or whether he accepted at all, were proper and material subjects of inquiry and submission to the jury (*Brill* agt. *Tuttle*, 81 *N. Y.*, 454; *Ehrics* agt. *De Mill*, 75 *id.*, 320; *Risley* agt. *Smith*, 64 *id.*, 576; *Gallager* agt. *Nichols*, 61 *id.*, 435; *Munger* agt. *Shannon*, *id.*, 251; *Shaver* agt. *The Western Union Tel. Co.*, 57 *id.*, 459).

Besides these drafts could not effect a transfer of the claim, as they were in the usual form, and were not by their terms

drawn on any specific fund or demand (*Attorney-General* agt. *The Continental Life Ins. Co.*, 71 *N. Y.*, 325).

The question should have been submitted to the jury, whether, if a transfer of the claim had been made, it was made in good faith or fraudulently, and for the purpose of defrauding the plaintiff in the attachment (*Lansing, Sheriff,* agt. *Streeter*, 57 *Barb.*, 33; *The Merchants' and Traders' Bank* agt. *Dakin*, 50 *id.*, 587; *Anthony* agt. *Wood*, 29 *Hun*, 239; *Klinck* agt. *Kelley, Sheriff*, 63 *Barb.*, 622; *Rinchey* agt. *Stryker*, 28 *N. Y.*, 45).

In *Thurber* agt. *Blank* (50 *N. Y.*, 80), and *Castle* agt. *Lewis* (78 *N. Y.*, 131), upon which the decision in *Anthony* agt. *Wood* (96 *N. Y.*, 180), was based, the question of fraudulent transfers was not involved.

*Bills* agt. *National Park Bank* (89 *N. Y.*, 343), was an action not unlike this, and the court very pertinently remarks : "If claims can be attached only by service of the attachment upon the attachment debtor, and the actual seizure of the claim while he holds them, then a fraudulent debtor may easily place his creditors at defiance by concealing himself, or absenting himself, from the state, and though his debtors remain within the jurisdiction of the court, the debts cannot be attached; or he may, after the attachment has been served upon his debtor, make a fraudulent, sham or merely formal transfer, and thus defeat the attachment. Such has not been generally understood to be the law of the state, and is not now the law."

This case was again before the court of appeals (*Gibson* agt. *National Park Bank*, 98 *N. Y.*, 87), where the former decision (89 *N. Y.*, 343), was reaffirmed, and the case of *Anthony* agt. *Wood* applied.

This bank case clearly sustains the position that this claim was properly attached in the hands of Smith, as it was levied before he accepted or paid the drafts, or the amount to be paid was agreed upon or fixed, or the property constituting the consideration of the claim was received, or any arrangement was made for the application or disposition of the money, and after this action was commenced (*Anderson* agt. *Hun*, 5 *Hun*, 351;

Throop Grain Cleaner Company agt. Smith.

*Raymond* agt. *Richmond,* 78 *N. Y.,* 351; *Turrie's Case,* 1 *Smith's L. C.,* 1, *and notes*).

But the defendant has himself presented this issue of fraud.

The answer sets up as new matter the transfer, and alleges that it was made in good faith and for a valuable consideration. The issue thus presented, the defendant was bound to sustain by evidence (*see Gibson* agt. *National Park Bank,* 98 *N. Y.,* 87), and proofs were given by him to sustain this issue, and the plaintiffs were, therefore, entitled to meet such proofs and to have the question submitted to the jury on the evidence *pro* and *con.*

Besides, to this issue no reply is required, and it is to be deemed controverted, and the plaintiffs are entitled to traverse or avoid it by proofs on their part (*Code Civil Pro.,* sec. 522).

If, under all the facts, this action can be defeated, then the attachment creditor is utterly remediless under the laws of this state, to which he has a right to seek a remedy. The attachment debtor and his alleged assignee are both non-residents of and without property in this state and the law provides no mode under which jurisdiction can be obtained against them whereby proceedings to set aside the alleged assignments can be taken or enforced. Both the attachment debtor and his alleged assignee have furnished ample and available indemnity to this defendant to secure him against any recovery that may be had against him in this action, and the action should be sustained, for the facts appearing in the proofs establish a fraudulent transfer of this claim beyond any question, under the rules of law too well known to require a reference. And the assignees, although possessed with full knowledge of all the facts surrounding these transactions, have not seen fit to ask to be impleaded, and submit themselves to the jurisdiction of this court, as they could and should, had they any rights to protect (*Code Civil Pro.,* sec. 820; *Steuben County Bank* agt. *Alberger,* 56 *How.,* 345; *Bills* agt. *National Park Bank,* 89 *N. Y.,* 343; *Johnston* agt. *Stimmel, id.,* 117; *B. and O. R. R. Co.* agt. *Arthur,* 90 *id.,* 243).

And it is submitted upon the whole case, that the former decision (34 *Hun*, 91) should be reaffirmed and a new trial granted, with costs to abide event.

*Waters, McLennan & Dillaye*, for defendant.

I. The plaintiffs right of action depended solely upon the title acquired by the sheriff, by virtue of his levy of an attachment, issued in an action wherein the plaintiff's company were plaintiffs and Edward P. Allis was defendant. The levy was made on the 21st day of May, 1881, upon the chose in action described in the pleadings.

II. Upon the day of the levy, or rather the attempted levy, the defendant, Smith, did not owe the defendant in the attachment action the claim in suit, as it had been transferred before the levy of the attachment.

III. The transfer operated as an equitable transfer of the claim to the Farrell Foundry and Machine Company, of Ansonia, Connecticut, from the delivery of the draft and letters dated May 10, 1881, to wit, May 13th, and from that date the Farrell Foundry and Machine Company had a perfect right of action to recover said debt of Smith (*Brill et al.* agt. *Tuttle*, 81 *N. Y.*, 454; *Lewis* agt. *Berry*, 64 *Barb.*, 593; *Parker* agt. *City of Syracuse*, 31 *N. Y.*, 376; *Risley* agt. *The Phœnix Bank*, &c., 83 *id.*, 318; *People ex rel.* agt. *Controller*, 77 *id.*, 45).

IV. The creditor can maintain no action under the attachment which could not be maintained by the defendant in the attachment suit (*Thurber* agt. *Blank*, 50 *N. Y.*, 80, 86). And neither the creditor in the attachment suit nor the sheriff can either maintain an action or defend one, upon the ground that the chose in action was fraudulently transferred (*Castle* agt. *Lewis*, 78 *N. Y.*, 131, 137; *Anthony* agt. *Wood*, 96 *id.*, 180). The motion for a new trial should be denied, with costs.

BARKER, *J.*—If Allis & Co. sold and transferred the debt in suit to the Farrell Company before the attachment was levied.

Throop Grain Cleaner Company agt. Smith.

thereon, then this action cannot be maintained, although such sale was void in law as against the attaching creditor. We all concur in this proposition, on the authority of *Anthony* agt. *Wood* (96 *N. Y.*, 180), *Pinchey* agt. *Striker* (28 *id.*, 45).

The attachment could become a lien only upon such *choses in action* as belonged to the debtor at the time of the levy. Whether or not there was such a transfer of the title to the demand in question as the defendant now sets up was a mixed question of fact and law.

The sheriff sought to make a levy on the 21st of May, 1881, by leaving a proper notice with the defendant Allis & Co., being non-residents. Up to this time all the negotiations relating to a sale and transfer had been carried on by correspondence between Allis & Co. and the Farrell Company. From their letters and the attending circumstances, the fact in issue is to be determined. It may be conceded that Allis & Co. were desirous to divest themselves of all title to their demand against the defendant, with a view of placing it beyond the reach of the attachment proceedings. But this they could not accomplish without the assent of the Farrell Company to become a purchaser and to take the title.

On this question, in my judgment, the evidence is not conclusive, and the case should have been submitted to the jury for their determination. The acts of Allis & Co., standing alone, could not affect a transfer. They never executed any paper which in form constituted a sale and assignment of the debt to the Farrell Company. The negotiations relative to the sale were commenced by Allis & Co., and at most was a proposition on their part to sell and transfer the debt to the Farrell Company. Therefore, at the time of the levy, the title was still in Allis & Co., unless prior to that their proposition had been accepted by the Farrell Company, and became the purchaser and assignee of the demand.

In terms, the latter company never consented to purchase the demand and take the title thereto. Neither did they do any act on their part which the court can say as a matter of

law was an agreement to purchase the demand against the defendant Smith. In their first letter, under date of May 10th, inclosing the two drafts, Allis & Co. made the request of the Farrell Company to credit their account with the amount of the drafts. In a reply written three days thereafter, the Farrell Company acknowledged the receipt of the drafts and stated that they had been forwarded "for collection," and that they "will report when drafts are paid." The letter of Allis & Co. does not intimate a desire to sell the debt against which the drafts were drawn. In the usual and ordinary course of business between merchants and traders, the drafts would be regarded as sent for collection, and as a means, when paid by the drawee, of placing funds in the hands of the payee for the purposes indicated in the letter of instruction.

It also appears that on the same day their first letter was dated, Allis & Co. sent another letter to the Farrell Company relative to the drafts which were inclosed in the first, in which they say: "Our people to-day send drafts on Smith for amount due from him. We charge the amount to you in general account, and want you to credit the same and collect it. Please have no error in receiving and treating the drafts as belonging to you." It does not clearly appear from the evidence that this letter had been received by the Farrell Company when they sent their letter of the 13th, to which reference has been made. If it was in hand at that time, the fact that in their reply they wholly omitted to refer to the contents of the last letter written by Allis & Co., has much significance as indicating that they did not assent to the proposition to treat the drafts as their own, and this is the more so when considered in connection with the fact that they never did credit Allis & Co. with the drafts, and the evidence tends to show that they did not treat them as their own until the drawee had accepted and paid the same, which was after the levy made by the sheriff. If in fact the last letter was received by the Farrell Company, after they had sent the one under the date of the 13th of May, then the same significance may be given to their omission to

acknowledge its receipt, or reply to the same in any manner until after the attachment was served. It was for the jury to say whether the omission on the part of the Farrell Company to reply to the letter amounted to an assent upon their part to accept the proposition of Allis & Co. to become the purchaser of the debt against the defendant Smith. The letter of the 19th of May, written by the Farrell Company to the defendant, in which they stated that they have credited Allis & Co. with the drafts, and that they were the owners of the same, is not conclusive evidence in the face of the other circumstances, that they had assented to become purchasers before the levy of the attachment. It was not addressed to Allis & Co., and whether it was received by Smith before the attachment was levied, does not appear. As a matter of fact, the account of Allis & Co. had not been credited with the amount of the drafts. As against the evidence on which the defendant relies for the purpose of showing title in the Farrell Company, at the time of the levy, there are many facts and circumstances which would have justified the jury in reaching the conclusion that the latter never assented to the proposed sale and did not become a purchaser of the claim prior to the levy. The defendant Smith was not a debtor to Allis & Co. at the time the drafts were drawn and forwarded to the Farrell Company. The contract to supply machinery was then unexecuted in part, and the defendant was under no obligation to make any payment until it was fully performed, and he assumed that position on refusing to accept the drafts. There is another circumstance indicating that Allis & Co. did not regard that they had surrendered all control over the contract with the defendant, for as late as the 17th of May they agreed with Smith to abate from the contract the sum of $385, against which their draft was drawn. After the levy was made, and in a letter dated May 30th, the Farrell Company assent to that arrangement.

There is also evidence which, I think, tends to show that after the levy was made, and before the defendant paid the

drafts, Allis & Co. gave their notes to the Farrell Company for balances found due from them without deducting therefrom, or claiming the right to do so, the amount of the drafts, and thus indicating that it was not the intention of the Farrell Company to treat the drafts as so much paid on their account against Allis & Co.

If the Farrell Company consented to accept the proposition made to them by Allis & Co. to purchase the drafts, and the minds of the parties met on the terms of the bargain, and the drafts were sent and delivered to the payee, as a mode of effecting the transfer, the title, doubtless, did pass as between those parties, although the drawee refused to accept the same. But sending forward of the drafts alone, without any further arrangement between the parties relative to a bargain and sale of the debt, would not be sufficient to transfer either the legal or equitable title thereto.

A check or inland bill of exchange, drawn in the ordinary form, not describing any particular fund, or using any words of transfer of the whole or any part of any amount, standing to the credit of the drawer, does not operate as an assignment, either actual or equitable, of the funds of the drawer in the hands of the drawee. Such check or draft to have the effect of an equitable assignment must be drawn on a particular specified fund (*Attorney-General* agt. *The Continental Life Ins. Co.*, 71 *N. Y.*, 325).

At the time these drafts were drawn, and until after the levy was made, Smith was not a debtor to the drawer in any sum whatever, for the contract between him and Allis & Co. was unexecuted in part, and in a legal sense he was not indebted to the drawer, nor were there any funds in his hands belonging to Allis & Co.

A *chose in action* may be assigned by parol, yet, to constitute such an assignment, there must be a surrender of all control over the demand by the creditor, and it must be shown that the appropriation of it was absolute and unqualified. If the case had been submitted to the jury, and they had found, as I think

they would have been justified in finding, from the evidence that at the time the drafts were sent forward the Farrell Company parted with no value on receiving the same and did not reliquish any right which they had against Allis & Co., then there was no transfer of the demand, nor an equitable assignment of the same (*Rupp* agt. *Blackford*, 34 *Barb.*, 629; *Kissell* agt. *Albertus*, 56 *id.*, 365).

The general rule is, as established by all the authorities, that an ordinary draft, unaccepted, does not work a transfer to the payee of the debt drawn against. What will amount to the present appropriation of the debt or demand so as to constitute a legal or equitable assignment, where there is no formal transfer, is a question of intention, to be gathered from all the language used by the parties, written or verbal, construed in the light of the surrounding circumstances.

If there was a failure to make an actual transfer of the debt *in presenti*, then the Farrell Company was not bound by any contract valid as against it, for the reason that none of its officers or agents subscribed any note or memorandum in writing agreeing to purchase the debt. The statute of frauds applies to a sale of a thing in action, when the contract price is fifty dollars or more. An account for goods sold and delivered is a *chose in action* (*Armstrong* agt. *Cushing*, 43 *Barb.*, 340).

As we have seen, the draft standing alone did not operate as a transfer even in form, so the court could not say as a matter of law that the buyer did accept and receive the thing in action, or some evidence of it, so as to satisfy the second subdivision of third section of the statute. Nor did the Farrell Company pay any part of the purchase price. An agreement that the price shall be applied to a precedent debt, owing by the seller to the buyer, does not amount to a payment of the purchase money as required by the statute, unless actually applied by giving a receipt or otherwise (*Ely* agt. *Ormsby*, 12 *Barb.*, 570).

It is not well settled how much must be done to make an effectual assignment of an account. But it was said by the court in *Truax* agt. *Stater* (86 *N. Y.*, 630): "The better opinion

seems to be that an account may be sold like any chattel, and that an agreement which will pass the title to a chattel will pass the title to an account. There must be a valid agreement of sale, based upon a sufficient consideration, and if the price be fifty dollars or over the statute of frauds must be complied with."

If, at the time of the levy, the Farrell Company had assumed the position as against Allis & Co., that it was not bound by any valid contract to allow the face of the drafts on its account against them the court could not hold, as I think, in a suit between those parties involving the validity of the sale, that as a matter of law the title to the account had in form passed to the Farrell Company, and Allis & Co. were entitled to a credit on their account for the face of the drafts.

Upon the whole evidence, I think a case was made for the jury. Some of the facts essential to resting a title to the account in the Farrell Company, even as against Allis & Co., were not so clearly settled by the evidence, that the court could dispose of the case as matter of law.

Nonsuit set aside. New trial ordered. Costs to abide event.

SMITH, P. J., concurs; BRADLEY, J., dissents and reads an opinion for affirmance; HAIGHT, J., does not vote.

BRADLEY, J. (*dissenting*).— The defendant had made a contract with Allis & Co. for the purchase of some flouring mill apparatus to be sent by railroad to him at Marcellus, N. Y. A portion of this was manufactured by Allis & Co., at Milwaukee, some at Jackson, Mich., and some by the Farrell Foundry and Machine Company, of Ansonia, Conn. The portions from the two former places were shipped to the defendant in April, and that from Ansonia in May, 1881. And it all amounted to $3,850. By the contract, the title to the property was vested in the defendant when loaded on the cars and consigned to him, and therefore the levy of the attachment on the property was ineffectual (29 *Hun*, 493). This action is in aid of the attachment (*Code Civil Pro.*, sec. 677). And the important

question is, where was the legal title to the claim against the defendant for the property so contracted to be sold, and sold by Allis & Co. to him at the time of the levy of the attachment, on the 21st day of May, 1881? On the part of the defendant, it is contended that it was not then in Allis, but by transfer from Allis & Co. the Farrell Foundry Machinery Company had taken such title. While the contention of the plaintiffs is, that no effectual transfer had been made to the latter company, and that the attempted transfer was fraudulent and void as against the plaintiffs, the Throop, &c., Company, a creditor of Allis.

The plaintiffs' right to maintain this action is dependent wholly upon the creation of a specific lien by the levy of the attachment, and that was not accomplished unless the legal title was then in Allis to the claim against the defendant. If a transfer had been in fact made of it to the Farrell, &c., Company, the attachment levy was not effectual to furnish any lien or right of the action. The question whether or not the transfer was fraudulent as against the creditors of Allis cannot arise, nor is it entitled to consideration in this action (*Anthony* agt. *Wood*, 96 *N. Y.*, 180; *Lawrence* agt. *Bank of the Republic*, 35 *id.*, 320.)

It seems that the attachment had been levied May 7th upon the machinery which had arrived at Marcellus, and on the 9th of May the defendant advised Allis & Co. by telegram of the levy; and on May 10th that company sent to the Farrell, &c., Company two sight drafts on the defendant, one for $1,050 and the other for $2,800, and by letter wrote the company that the drafts had been sent and requesting credit for them; and by another letter of the same date to the company say: "Our people to-day send drafts on Smith for amount due from him. We charge the amount to you in general account, and want you to credit the same and collect it. Please have no error in receiving and treating the drafts as belonging to you." And by letter of the same date Allis & Co. say to the defendant: "We have to-day assigned our account against you to the Far-

rell Foundry and Machine Company, of Ansonia, Conn. You will kindly honor their drafts when presented." Farrell & Co., by letter of May 13, acknowledge receipt of that to them of the 10th, and say to Allis & Co.: "We have sent the two drafts on H. C. Smith forward for collection. * * * Will report when the drafts are paid." And May 19th the Farrell Company wrote the defendant: "We have credited the drafts on his Allis & Co.) account, they became ours, * * * and we would like New York drafts for the amount, as you and he agree." And evidence was given tending to prove that Allis & Co. charged the amount of the claim to the Farrell Company when the drafts were sent to them, and that the latter company made an entry of the drafts on their bill book, but did not place them to the credit of Allis & Co. by any entry in their account with them. That at the time the drafts were sent to, and the request made of the Farrell Company to credit the amount, the indebtedness of Allis & Co. to that company exceeded the amount of those drafts.

The evidence was sufficient as between those parties to support a transfer of the claim against the defendant to the Farrell Company. It is, however, contended by the learned counsel for the plaintiffs that such fact was not conclusively established, but that the evidence, at most, presented a question of fact for the jury which should have been submitted to them. The transaction rested wholly in written communications.

The drafts were sent with information that the amount was charged in account and with request of the Farrell Company to so credit them.

The latter company received the drafts and advised Allis & Co. that they had sent them forward for collection, and informed the defendant that they had given Allis & Co. credit for them. This, as between the parties, would seem to take from the latter the right to collect the claim and vest it in the Farrell Company. The fact that the drafts were sent forward by it on the receipt of them, with information to Allis & Co. that they were so used, was an effectual adoption of the ex-

Throop Grain Cleaner Company agt. Smith.

pressed purpose for which they were sent to and received by them. The two drafts correspond in amount with that of the amount of the defendant's liability upon his contract for the supply of machinery, and there was then *no other* existing dealing or transaction between him and Allis & Co. Those drafts were understood to be, as they were in fact, drawn on account of such liability or debt, which in some states would give to the drafts, as between the drawer and payee, the effect of an equitable assignment of the claim (*Daniel on Neg. Insts.*, secs. 17–28; *Mandeville* agt. *Welch*, 5 *Wheat.*, 277; *Roberts* agt. *Austin*, 26 Iowa, 315; *Forgaities* agt. *Bank*, 12 *Rich*, 518; *Mann* agt. *Buck*, 25 *Ill.*, 35).

In this state, the rule is such that the mere drawing and transmission of the drafts by the drawer to the payee would not have the effect of an assignment of the fund or debt due from the defendant, as the drafts were not in their terms drawn upon the particular fund, but were in form negotiable bills of exchange, and the acceptance by the defendant was requisite to effect an assignment of the debt or of his liability to pay it (*Attorney-General* agt. *Continental Life Ins. Co.*, 71 *N. Y.*, 325; *S. C.*, 27 *Am. Rep.*, 55). But here the defense does not rest alone upon the effect of the drawing and receiving the drafts. The intention and purpose of transfer are expressed in the correspondence, and is necessarily by it so understood by all the parties to the transaction.

The delay in acceptance by the defendant was not caused by any misunderstanding or want of acquiescence in that respect, but to obtain indemnity against the proceedings taken by the Throop, &c., Company to charge the defendant with liability to it for the amount of the debt. The reason which induced the transfer does not defeat its operation as such between the parties, but goes only to the good faith of the transaction. It is evident from the correspondence that the reason and one purpose of the transfer was to defeat the right of the Throop, &c., Company to obtain a lien upon the claim by attachment or to appropriate it to the payment of the judgment, that the com-

pany might recover in its action against Allis. But there is not sufficient in this and the circumstances as between Allis & Co. and the Farrell Company to so qualify the transaction as one for collection of the debt simply as distinguished from and in exclusion of a transfer. While the former result was in view, the right of the Farrell Company to the fund was given by the transfer, and could not be diverted by Allis & Co., although as against a creditor of the latter permitted to allege fraud as against their creditors the transfer would be treated as void. The fact that the entire amount of the drafts had not become due at the time they were drawn is not important, as the liability to pay was in a then existing contract for the purchase of property a portion of which had then been delivered. The residue was to go from the Farrell Company and was delivered before the levy of the attachment.

The transfer covered the debt arising out of the liability of the defendant given by such contract; and when the Farrell Company sent forward the drafts for collection they advised the defendant that the rest of the property would be delivered the then next week and requested him to have the bank hold the larger draft until the arrival of such residue of the property.

In *Bills* agt. *National Park Bank* (89 *N. Y.*, 343), and *Gibson* agt. *Same* (98 *id.*, 87), the fund in question belonged to the corporation debtor at the time the attachments were levied and the outstanding certified checks drawn upon it were then held by its officer for its purposes, and did not go into the hands of a *bona fide* holder, but were paid to such officer by transfer to his individual credit and the fund used for the benefit of such debtor. The lien of the attachment was held effectual to support the actions against the bank because it was chargeable with notice of the relation of the officer. The checks were drawn by and payable to him as such.

The cases cited by the plaintiffs' counsel relating to the effect of the levy of an attachment upon tangible property, capable of manual delivery, which had been transferred in fraud of creditors, do not necessarily have any application to the case at bar.

In such case the lien of attachment will support an action in aid of it, and of the execution issued upon the judgment recovered in the action, and the plaintiff may attack the transfer as fraudulent against the creditors of the debtor (*Rinchey* agt. *Stryker*, 28 *N. Y.*, 45; *Frost* agt. *Mott*, 34 *id.*, 253). But no such lien is acquired upon choses in action, not the subject of levy by execution, as against a fraudulent assignment.

The question of good faith of the assignment, or fraud as against creditors, cannot arise in an action by the attaching creditor in support of the lien of his attachment.

The remedy for relief in such case is in equity only by action in the nature of a creditor's bill (*Thurber* agt. *Blanck*, 50 *N. Y.*, 80; *Anthony* agt. *Wood, supra*).

The view taken of the case leads to the conclusion that there was no evidence to support a verdict for the plaintiffs; and that the motion for a new trial should therefore be denied, and judgment directed for the defendants.